866 So.2d 220 (2004)
M.H., mother of O.O. and S.B., children, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 1D03-0353.
District Court of Appeal of Florida, First District.
February 27, 2004.
*221 Ann Marshall-Jones, Legal Services of North Florida, Inc., Tallahassee, for Appellant.
Avron Bernstein, Dept. of Children and Families, Tallahassee, for Appellee.

ON CLARIFICATION
HAWKES, J.
The opinion issued on October 28, 2003 is withdrawn and this opinion is substituted in its place.
Appellant appeals from a final order terminating her parental rights pursuant to section 39.806(1)(c), Florida Statutes (2001). As grounds, Appellant argues no competent, substantial evidence supported the trial court's finding that Appellant engaged in conduct towards her children that demonstrated her continuing involvement would threaten their lives, safety, well-being, or physical, mental, or emotional health, irrespective of the provision of services. Alternatively, Appellant argues termination of her parental rights was not the least restrictive means of protecting her children from serious harm. We find Appellant's arguments to be meritorious, and reverse.
The Department of Children and Families (DCF) cross-appeals, arguing termination of Appellant's parental rights was proper under section 39.806(1)(c), Florida Statutes, but that the trial court erred by not also terminating Appellant's parental rights pursuant to section 39.806(1)(e), Florida Statutes (2001). Finding no competent, substantial evidence to support termination of parental rights pursuant to section 39.806(1)(e), Florida Statutes, and noting, moreover, that DCF failed to make any effort to reunify the family, we affirm the issue raised on cross-appeal without discussion.
The evidence is undisputed. Before DCF became involved with this family, Appellant voluntarily placed her children in the Florida Baptist Children's Home (FBCH) and, on the same day, admitted herself to an inpatient drug treatment facility. When Appellant brought the children to FBCH, they were "very taken care *222 of," with no signs of abuse or neglect. Testimony regarding subsequent, supervised visits between Appellant and her children after DCF became involved, expressly provided that contact with Appellant was not harmful to her children. Appellant was "very motherly," "had all the right stuff," and "the bond was there." The children were excited over visits, and the visits were "encouraging," "loving," and "bonding for the entire family." Appellant brought gifts and money, sent cards and letters, and always acted appropriately with her children.
Subsequently, DCF was informed by a professional service provider, through whom Appellant had attended self-referred inpatient and aftercare drug treatment, that Appellant needed additional inpatient treatment. Despite being so informed, DCF did not make a referral for Appellant to receive the treatment. When Appellant requested a referral for a TASC[1] evaluation, DCF declined to make that referral as well and, instead, told her to speak with her attorney. Although DCF knew Appellant had transportation difficulties attending visitations and aftercare drug treatment, DCF informed Appellant that transportation was her responsibility. Only later did DCF relent, and then offered transportation only to collect urinalyses. In fact, the only "assistance" DCF provided Appellant was a referral for random urinalyses and "closure" counseling, so Appellant's children could be prepared for termination of her parental rights.
Ultimately, DCF sought to terminate Appellant's parental rights because of her drug addiction. However, it is well settled that a parent's drug addiction, standing alone, is an insufficient ground upon which to terminate parental rights. See C.C. v. Dep't of Children & Family Servs., 812 So.2d 520, 523 (Fla. 1st DCA 2002) (stating substance abuse alone does not establish "prospective neglect"); see also In re C.V.T., 843 So.2d 366, 368 (Fla. 2d DCA 2003) (holding egregious conduct is not a basis for termination of parental rights based on past drug use alone, without connecting the drug use to abuse, neglect or specific harm to the child); B.C. v. Dep't of Children & Families, 846 So.2d 1273, 1275 (Fla. 4th DCA 2003) (holding evidence insufficient to support dependency where, although parent had drug and alcohol problem, there was no evidence child suffered harm or injuryphysical, mental or emotionalas consequence of parent's alcohol and drug use, and no evidence parent failed to meet child's needs while child was in his care).
Rather, to terminate parental rights under section 39.806(1)(c), three sequential evidentiary requirements must be met.[2]
First, the trial court must find the children's life, safety, or health would be threatened by continued interaction with the parent, regardless of the provision of services. See In re C.W.W., 788 So.2d 1020, 1023 (Fla. 2d DCA 2001). "In essence, the trial court must find that any provision of services would be futile or that the child[ren] would be threatened with harm despite any services provided to the parent." Id.; see also N.L. v. Dep't of Children & Family Servs., 843 So.2d 996, 1002 (Fla. 1st DCA 2003).
Second, if the court finds the children would be threatened with harm, despite the provision of services, DCF *223 must then prove there is no reasonable basis to believe the parent will improve. See F.L. v. Dep't of Children & Families, 849 So.2d 1114 (Fla. 4th DCA 2003); see also L.B. v. Dep't of Children & Families, 835 So.2d 1189, 1195 (Fla. 1st DCA 2002) (noting prospective neglect or abuse may be found if a parent is so afflicted that no reasonable basis exists for improvement). Where the record demonstrates a reasonable basis exists to find the parent's problems could be improved, parental rights cannot be terminated. See L.B., 835 So.2d at 1195.
Finally, DCF must show termination is the least restrictive means of protecting the children from serious harm. See id. at 1195. The least restrictive means test in the context of termination of parental rights requires those measures short of termination be utilized if such measures will permit the safe reestablishment of the parent-child bond. See id. at 1196 (holding termination of mother's parental rights not least restrictive means where father working on case plan, and no evidence mother's visits were harmful); Gaines v. Dep't of Children & Families, 711 So.2d 190 (Fla. 5th DCA 1998) (holding termination of parental rights not least restrictive means, in part, where court did not consider relative placement before terminating parental rights).
In this case, none of these requirements were met. The record contains no evidence that Appellant's involvement with her children threatened them with harm of any kind. Although Appellant is addicted to drugs, there was no evidence that her children suffered harm as a result of her addiction, nor that Appellant failed to meet their needs while they were in her care.
Similarly, there was no evidence to establish a reasonable basis to believe Appellant would not improve. Appellant sought treatment before DCF became involved, continued to seek help thorough DCF and, when DCF failed to make necessary, requested referrals, again sought treatment on her own. Appellant ensured her children's safety and care by voluntarily placing them with FBCH, so she could obtain inpatient treatment. Although Appellant suffered two relapses over a period of approximately one year, she immediately self-referred into another inpatient facility. This indicates Appellant's strong desire to overcome her addiction and parent her children, and demonstrates a reasonable basis to believe Appellant's problems could be improved, despite DCF's utter failure to provide her with requested, necessary services.
Finally, there was no evidence that termination of Appellant's parental rights was the least restrictive means of protecting her children. At least five relatives in Alabama were willing to take the children. The general master, in making her recommendations to the trial court, did not consider three of the placements. The other two were rejected on grounds that one was an "eleventh hour" relative who appeared by phone instead of in person, and the second was not available when the general master called on the day of trial. Thus, the general master concluded, these relatives were not available "in the truest sense and spirit of the statute." Considering Florida's preference for relative placements where possible, these are insufficient grounds upon which to base a determination that these relatives were unavailable or inappropriate.
However, even if the grounds were valid, they lack record support. The DCF investigator testified he spoke with several relatives, including the two rejected by the general master, immediately after DCF became involved in the case. Each relative expressed a willingness to take the children, and he gave their names to the *224 DCF service worker. There was no evidence that any of these relatives were inappropriate. Significantly, the DCF service worker testified she did not explore any relative placement, despite being provided with the names of these relatives, including the relative who testified by phone, from the beginning of the case. Clearly, under these facts, termination of Appellant's parental rights was not the least restrictive means of protecting the children.
Because the record is devoid of evidence to support termination of Appellant's parental rights pursuant to section 39.806(1)(c), Florida Statutes, the order is REVERSED and the case REMANDED, with immediate issuance of the mandate.
WOLF, C.J., and BROWNING, J., CONCUR.
NOTES
[1] Treatment Alternative to Street Crime.
[2] We note that, before termination can occur under any statutory provision, the trial court must also conclude termination is in the children's manifest best interests. See § 39.810, Fla. Stat. (2001).