930 So.2d 798 (2006)
D.P., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee.
No. 3D05-771.
District Court of Appeal of Florida, Third District.
May 31, 2006.
Nathan D. Clark, Miami; Victoria McFadyen, Key West, for appellant.
Calianne P. Lantz, for appellee.
Before LEVY, GERSTEN, and FLETCHER, JJ.
PER CURIAM.
D.P. ("Mother") appeals from an Order terminating her parental rights, arguing that the lower court abused its discretion in denying her request for an extension of the Case Plan. Although the child was in the system for approximately three years under a Case Plan originating from an incident involving the child's father ("Father"), the evidence reflects that Mother *799 was in substantial compliance with the Case Plan throughout. We reverse.

HISTORY OF CASE AND CASE PLAN(S)
The child was born on May 29, 2001, and came into the DCF system in July of 2001, following a domestic violence episode by Father against Mother.[1] On November 29, 2001, DCF filed an initial Case Plan with the goal of maintaining and strengthening the family structure. As part of the initial Case Plan, both parents agreed not to have alcohol or illegal substances in the home, and Mother agreed that she would not be under the influence of alcohol or illegal substances while with her child, or allow any person to care for the child who is under the influence. Mother also agreed to submit to random drug and alcohol testing, cooperate with monthly home visits by the DCF counselor and guardian ad litem, and follow the recommendations of a domestic abuse outreach program assessment.
During the course of the family's presence in the DCF system, Mother substantially complied with all the DCF recommendations and requests as evidenced by the court Reviews[2] and Guardian Ad Litem Reports.[3] However, in September *800 and October of 2003, Mother was involved in three separate alcohol-related incidents; at least one involved the presence of the child.[4] As a result of these drinking episodes or incidents, the Child was removed from Mother and placed in DCF custody on September 21, 2003. On November 4, 2003, Mother was ordered to attend 90 NA/AA sessions, attend a substance abuse program and initiate a mental health assessment. At this point, Mother's Case Plan remained the same.
The Case Plan was updated on February 3, 2004, with a primary goal toward reunification with the Mother. In this Case Plan, DCF recognized that Mother's addictions and mental health needed to be defined, and it was necessary for her to participate in a treatment plan "to allow her to parent her child free of risk." In this Case Plan, DCF set forth several tasks for Mother to complete, including: an outpatient treatment program; AA/NA meetings; remain sober; urinalysis two times per week; development of a written plan for relapse prevention; and a psychological evaluation. Mother substantially complied with this Case Plan.
In May 2004, Mother was involved in a domestic violence incident, involving the maternal grandmother. At this time, the Child was in DCF custody. Following the domestic violence incident, the Case Plan was amended, on June 24, 2004, with a goal to terminate parental rights under section 39.806(1)(e), of the Florida Statutes.[5]

TESTIMONY AND EVIDENCE
At the termination hearing, DCF presented the testimony of the DCF investigators who worked the case at different points.
Helen Ochiltree, the DCF investigator who worked the case from April 2001 until March 2003, testified that Mother completed most of the services except a family treatment course, which Mother claimed she could not attend because of her work hours. Ms. Ochiltree recognized that Mother provided for child, and owns and maintains the house. She also testified that Mother's urinalysis were always negative.
Rosemary Vukas, the DCF investigator who worked with the case from August 2003 until April 2004, testified that alcohol treatment was recommended following Mother's arrest in October of 2003 for DUI, and Mother complied with the course.
Sandy Trosset, the DCF investigator who worked the case from April to July of 2004, testified that the goal for reunification and return remained on May 11, 2004, despite Mother's DUI arrests; that a change in goal was recommended after the domestic violence incident involving the maternal grandmother because mother completed the substance abuse program in *801 April and a month later, she relapsed. She recognized that the Child was in foster care at the time of the incident and that Mother was not offered any services following the domestic incident.
Mother presented evidence that she entered the AGAPE substance abuse residence center for domestic violence victims, on May 11, 2004. Liliana Marks, a therapy coordinator for AGAPE Family Ministries, testified that Mother attended domestic violence and parenting classes, completed the residential program, and was currently in the aftercare program.
Michelle Auguste, an AGAPE counselor, testified that Mother completed the coping skills, life management, domestic violence, parenting, addiction educational groups, life management, grief and loss programs, and relapse prevention sessions.
Suzanne Ferraro, the AGAPE case manager, testified that Mother was a walk in, who entered the program voluntarily.
Mother testified on her own behalf. She expressed remorse about the incident involving her Mother, and explained that the relapse occurred because the initial treatment did not address the core of the personal issues that cause the addiction. She testified that after entering AGAPE she has learned to understand and deal with life stressors and her life issues.

COURT'S FINDINGS/ORDER
The court found that it is in the best interest of the child that parental rights be terminated because of the parents' inability to provide and care for the child. The court noted that domestic violence and substance abuse prevented the parents from providing a safe home for child; particularly, the court noted the domestic violence involving maternal grandmother. The court recognized Mother's recent efforts but found them to be "too little too late" after noting that the family had been in the system for three years.

ANALYSIS
The standard of review on a termination of parental rights case is "highly deferential." That is, "[a] finding that evidence is clear and convincing enjoys a presumption of correctness and will not be overturned on appeal unless clearly erroneous or lacking in evidentiary support." N.L. v. Dept. of Children and Family Serv., 843 So.2d 996, 999 (Fla. 1st DCA 2003). Thus, this Court's review is limited to the issues on appeal and the evidentiary support for, and correctness under the law of, the trial court's order on the appellate issues. Id. at 999.
In the instant case, DCF sought termination of parental rights on the ground that Mother had a substance (alcohol) abuse problem; Mother failed to comply with the Case Plan in failing to report her alcohol-related arrests; and the fact that the Case Plan was in place for longer than the one year required under the statute. The trial court found that termination was proper because, among other things, Mother's alcohol addiction affected her ability to care for the child, as evidenced by the domestic dispute involving the maternal grandmother. Although Mother indisputably had an alcohol abuse problem, the Record clearly reflects that the incident triggering termination in the instant case was the domestic incident involving the maternal grandmother.
To terminate parental rights on the ground of egregious conduct, "there must be a nexus between the conduct and the abuse, neglect, or specific harm to the child." C.B. v. Dep't of Children & Families, 874 So.2d 1246, 1254 (Fla. 4th DCA 2004); K.R. v. Dep't of Children & Family Servs. (In re C.V.T., Jr.), 843 So.2d 366, 368 (Fla. 2d DCA 2003) (holding that the parent's past drug use did not support a finding of egregious conduct "without connecting *802 the drug use to any abuse, neglect, or specific harm to the child").
In M.H. v. Dept. of Children and Families, 866 So.2d 220, 222 (Fla. 1st DCA 2004), the First District noted that "a parent's drug addiction, standing alone, is an insufficient ground upon which to terminate parental rights." The Court in M.H. set forth the evidentiary requirements to justify termination of parental rights. First, the court must find that the child's life, safety, or health would be threatened by continued interaction with the parent, regardless of the provision of services. Second, DCF must establish that there is no reasonable basis to believe the parent will improve. Finally, DCF must establish that termination is the least restrictive means of protecting the child from serious harm. M.H., 866 So.2d at 222-23.
In the instant case, the only evidence of egregious conduct involving Mother occurred in September of 2003, when Mother was found intoxicated on the side of the road with the child in the car. At this juncture, DCF continued to maintain a goal toward reunification. In fact, following the September 2003 incidents, DCF updated Mother's Case Plan, with a primary goal toward reunification. In this new Case Plan, DCF recognized that Mother's addictions and mental health needed to be defined, and it was necessary for her to participate in a treatment plan "to allow her to parent her child free of risk." Moreover, prior to, and following, these incidents, Mother had never engaged in any egregious conduct toward or involving the Child, and was in substantial compliance with the Case Plan. Following the alcohol-related incidents in September of 2003, additional services were recommended by DCF, which Mother substantially completed.
The goal toward termination in the instant case clearly emerged following the domestic incident involving Mother and the maternal grandmother. This incident did not involve the child; and, in fact, the child was not present. Moreover, it is undisputed that Mother voluntarily submitted to a residential substance abuse facility, which she was not previously offered, and at the time of trial had completed the program and was making progress in the aftercare program.
The court may have found that Mother's actions were "too little, too late." However, given the history of the case, and the circumstances under which the family came into the system, Mother was not given "three years of chances," as DCF contends and the trial court found. In fact, Mother made great strides during the three years by leaving an abusive relationship, maintaining her job, completing all DCF tasks, and submitting to a residential treatment.

CONCLUSION
The Record does not support termination of Mother's parental rights. Accordingly, the Order terminating Mother's rights is reversed and the matter remanded to have the Case Plan extended and grant Mother an opportunity to regain reunification with the child.
NOTES
[1] DCF's Petition for Dependency alleged that the child "is presently under substantial risk or imminent threat of harm or abuse or neglect, within the meaning and intent of chapter 39, Florida Statutes, which is likely to cause the child's physical, mental or emotional health to be significantly impaired due to the [father's domestic violence]."
[2] At a February 19, 2002, review, the trial court found that Mother and Child had a strong bond and that Mother posed no risk to the child. The court found that the parents' domestic violence episodes always involved alcohol. As a result, Mother and Father were ordered to participate and comply with a substance abuse program and anger management course.

An August 6, 2002, review reflects that Mother completed the substance abuse course on April 24, 2002, but not the anger management program. The Case Plan was again amended to require that Mother attend a six-week domestic violence program. Additionally, the court recognized that Mother's rigid work schedule is a factor in her inability to complete services.
At a February 4, 2003, review, Mother was in partial compliance with the Case Plan. Mother had completed the anger management classes, was attending individual counseling, and tested negative for drugs. Mother also attended and completed the six-week domestic abuse program.
At a May 8, 2003, review, Mother was in substantial compliance with the Case Plan.
[3] The Guardian Ad Litem Reports also shed light into Mother's case history. The February 27, 2002, Report indicates that Mother was in substantial compliance with the Case Plan; that she was firmly commitment to sobriety; that she was reluctant to enter domestic violence program because her work schedule impeded attendance. Additionally, the Report indicates that child was thriving at home.

The August 7, 2002, Report explains that the parents married, and that although Mother was in the beginning stage of compliance, domestic violence and alcohol remained an issue.
The May 9, 2003, Report indicates that Mother was in compliance with the Case Plan; she completed domestic violence education and the parents were attending couple's counseling. Additionally, the Report indicates that the child received positive attention from parents.
By the November 11, 2003, Report, the child was out of the house. The Report explains that Mother was assessed for relapse prevention following a relapse after thirteen months of supervision. Mother completed an alcohol program assessment. The Report explains that child was unhappy when visits with Mother end, and she asked for her parents.
The May 11, 2004, Report explains that the goal of the Case Plan changed from reunification to termination, and Mother's unsupervised visitation was terminated. The Report indicates that the parents divorced, that Mother appeared to be in compliance, but then experienced episodes which demonstrate the power of her addiction. The Report indicates that none of the treatment or services worked because Mother's drinking continues.
The September 8, 2004, Report explains that the child's contact with Mother ceased on June 10, 2004, and that Mother entered AGAPE rehab services. The Report notes that Mother was given plenty of time to complete Case Plan but failed to do so.
[4] Mother was found intoxicated on the side of the road with the child in the vehicle.
[5] Section 39.806(1)(e) provides:

(e) A petition for termination of parental rights may also be filed when a child has been adjudicated dependent, a case plan has been filed with the court, and the child continues to be abused, neglected, or abandoned by the parents. In this case, the failure of the parents to substantially comply for a period of 12 months after an adjudication of the child as a dependent child ..., constitutes evidence of continuing abuse, neglect, or abandonment....
§ 39.806(1)(e), Fla. Stat. (2005).