953 So.2d 547 (2007)
C.M., Father in the Interest of: A.A., A Child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 1D05-5351.
District Court of Appeal of Florida, First District.
February 8, 2007.
*549 Michael P. Eng, Jacksonville, for Appellant.
Stacey L. Hill, Assistant General Counsel, Jacksonville, for Appellee.
Thomas Wade Young and Patricia M. Propheter, Orlando, Attorneys for Guardian ad Litem.
OPINION ON APPELLEE'S MOTIONS FOR REHEARING, REHEARING EN BANC, CLARIFICATION AND/OR CERTIFICATION
PER CURIAM.
We have for review the motions of appellee Florida Department of Children & Families (Department) and the Guardian Ad Litem (GAL) program seeking rehearing, rehearing en banc, clarification and/or certification of question of great public importance. Because we grant the motion for rehearing and clarification, the opinion herein is substituted for our opinion in C.M. v. Department of Children & Families, 31 Fla. L. Weekly D2186, 2006 WL 2366420 (Fla. 1st DCA Aug. 17, 2006). The motions for rehearing en banc and for certification are denied.
C.M. (Appellant), the biological father of a 2-1/2-year-old daughter, A.A., appeals a final judgment terminating his parental rights over the child pursuant to sections 39.806(1)(b), 39.806(1)(d)1., 39.806(1)(d)3., 39.806(1)(f), and 39.810, Florida Statutes (2004), and permanently committing the child to the Department for subsequent adoption. Appellant contends, first, that given the presence of a willing, available relative for placement, the termination of Appellant's parental rights is not the least restrictive means available to the trial court to protect the child; and, second, that no competent, substantial evidence supports the trial court's finding that the child's paternal aunt, Ms. Fisher, is not a suitable relative placement. We affirm the order terminating Appellant's parental rights. However, because the trial court's decision to commit the child to the Department for subsequent adoption was made before the Department completed its ongoing *550 home study of Ms. Fisher, we remand for further proceedings relating to whether the child's manifest best interests would allow the child to be placed for adoption by the paternal aunt. See Interest of K.W. v. Dep't. of Children & Family Servs., 891 So.2d 1068 (Fla. 2d DCA 2004).
It is at the adjudicatory hearing that the trial court considers the elements required for termination of parental rights; due process requires that each element be proved by clear and convincing evidence. See § 39.809(1), Fla. Stat. (2004); Santosky v. Kramer, 455 U.S. 745, 747-48, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Adoption of Baby E.A.W., 658 So.2d 961, 967 (Fla.1995) (defining "clear and convincing" evidence as "an intermediate level of proof"); L.B. v. Dep't of Children & Families, 835 So.2d 1189, 1194 (Fla. 1st DCA 2002). Given the well-established precept that "parental rights constitute a fundamental liberty interest," the Department had the burden to establish that termination of parental rights is the least restrictive means of protecting the child from serious harm. See Padgett v. Dep't of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla.1991); Dep't of Health & Rehabilitative Servs. v. M.B., 701 So.2d 1155, 1163 n. 13 (Fla.1997); M.H. v. Dep't of Children & Families, 866 So.2d 220, 223 (Fla. 1st DCA 2004) (on clarification); Interest of D.A., 846 So.2d 1250, 1252-53 (Fla. 2d DCA 2003); L.B., 835 So.2d at 1195; Gaines v. Dep't of Children & Families, 711 So.2d 190, 194 (Fla. 5th DCA 1998). "The least restrictive means test in the context of termination of parental rights requires those measures short of termination be utilized if such measures will permit the safe reestablishment of the parent-child bond." M.H., 866 So.2d at 223; L.B., 835 So.2d at 1196. "A trial court's determination that evidence is clear and convincing will not be overturned unless it may be said as a matter of law that no one could reasonably find such evidence to be clear and convincing." Id. at 1194. The trial court's findings of fact are presumed to be correct and will not be overturned, absent a showing they are not supported by competent, substantial evidence. See id. at 1195; Interest of D.J.W., 764 So.2d 825, 826 (Fla. 2d DCA 2000).
The judicial decision whether to terminate parental rights involves two key determinations under section 39.802, Florida Statutes (2004): 1) whether the Department has proved at least one of the grounds for termination set forth in section 39.806, Florida Statutes (2004); and 2) whether the child's manifest best interests would be served by granting the petition to terminate parental rights. See § 39.810, Fla. Stat. (2004). Given the fundamental liberty interest accorded to parental rights, the Department had the burden to show that the termination of parental rights is the least restrictive means of protecting the child from serious harm. See M.H., 866 So.2d at 223 (finding no evidence that termination of parental rights was least restrictive means of protecting children, where at least five relatives were willing to take the children); L.B., 835 So.2d at 1195; Gaines, 711 So.2d at 194 (concluding that termination of mother's parental rights was not least restrictive means of protecting child and was not proper, where termination occurred on same day as adjudication of dependency, no voluntary protective services were provided to family, and trial court failed to consider placing child with adult relatives).
In their pending motions, the Department and the GAL contend, first, that our original opinion misapprehended the Florida Legislature's intent regarding the extent to which relative placements should be considered in parental termination cases. The motions assert, second, that *551 our original opinion impermissibly expanded the definition of "least restrictive means" and grafted the "least restrictive means" analysis onto the statutory "manifest best interests" analysis so as to elevate "least restrictive means" to a "super factor" that trumps the paramount concern for the child's best interests. Third, the motions contend that our original decision conflicts with Interest of K.W., 891 So.2d at 1068.
As to the first and second concerns, the movants note several recent statutory amendments. Section 39.810, Florida Statutes (2004), begins with the following language:
39.810 Manifest best interests of the child.In a hearing on a petition for termination of parental rights, the court shall consider the manifest best interests of the child. This consideration shall not include a comparison between the attributes of the parents and those of any persons providing a present or potential placement for the child. For the purpose of determining the manifest best interests of the child, the court shall consider and evaluate all relevant factors, including, but not limited to:
(1) Any suitable permanent custody arrangement with a relative of the child.
Section 39.810, Florida Statutes (2006), opens with this identical language, but after the above-quoted first sentence in subsection (1), the Florida Legislature has added the following language:
However, the availability of a nonadoptive placement with a relative may not receive greater consideration than any other factor weighing on the manifest best interest of the child and may not be considered as a factor weighing against termination of parental rights. If a child has been in a stable or preadoptive placement for not less than 6 months, the availability of a different placement, including a placement with a relative, may not be considered as a ground to deny the termination of parental rights.
Chap. 2006-86, § 26, Laws of Fla. (effective July 1, 2006). Rather than argue that this 2006 amendment applies retroactively to Appellant's 2005 termination proceedings, the movants contend that this amendment is relevant because it simply reiterates the Legislature's prior intent and, therefore, does not represent a change in legislative preference. The movants note also that the Legislature amended other provisions of Chapter 39 to conform our state statutes to the requirements of the federal Adoption and Safe Families Act, effective July 1, 2006. See, e.g., Chap. 2006-86, §§ 1 & 19, Laws of Fla. (adding language in §§ 39.01(51) & 39.621(2), Fla. Stat. (2006), redefining "permanency goals" under this chapter and stating a preference for "[r]eunification" followed by, in descending order of preference, "[a]doption when a petition for termination of parental rights has been or will be filed," "[p]ermanent guardianship of a dependent child . . .," and "[p]ermanent placement with a fit and willing relative under s. 39.6231").
Because our prior opinion might have been construed broadly to suggest a legislative preference for placing a child with a relative even under circumstances where the manifest best interests of the child compel a different placement option, we have deleted the confusing language in accordance with the long-established principle that "it is the ultimate welfare or best interest of the child which must prevail [over the parental or other familial rights]." Interest of Camm, 294 So.2d 318, 320 (Fla.1974); Padgett, 577 So.2d at 570. Additionally, we have stricken any language from the original opinion so as to clarify that the elements of the "least restrictive means" test are separate from, *552 and not to be confused with, the "manifest best interests" test. Finally, we have conformed our opinion to comport with the Second District Court's acknowledgment in K.W., 891 So.2d at 1068, that adoptive placement of a child with a suitable relative is one option following the termination of parental rights.
The movants' motion for certification of conflict alleges a conflict between our original opinion and K.W., 891 So.2d at 1068. In that case, S.S., the mother, tested positive for marijuana, Valium, and Xanax at the time of delivery; her newborn child, K.W., tested positive for marijuana. At five weeks, the child was sheltered, a petition for dependency was filed soon after that, and the Department placed the child in the joint custody of a maternal aunt and maternal cousin a month and a half later. After the trial court entered an order finding dependency based on the mother's consent, a case plan was adopted with the goal of reunification. Absent the mother's substantial compliance with the case plan, the Department petitioned the court to terminate her parental rights. Her rights were terminated, and the child was committed to the Department. See id. at 1069. On appeal, the mother argued, first, that given the child's current residency with a relative, the trial court had failed to consider, pursuant to the "manifest best interests" test in section 39.810(1), Florida Statutes (2002), whether a suitable long-term placement existed with a relative in lieu of termination of parental rights. Although the trial court considered the potential of a long-term custody arrangement with the maternal cousin (who had cared for the child for more than two years), the court concluded that the child's manifest best interests called for an adoptive placement in light of the child's very young age, the fact that the child had been in the maternal cousin's home almost since birth, and the fact that the cousin wanted to adopt the child. The Second District Court determined that the trial court had properly considered the child's manifest best interests, given that the scheme allowed the child to be adopted by the cousin, achieved permanency for the child, and was supported by "the facts and the record," including the mother's failure to comply with the case plan. See id. at 1070. Second, the mother in K.W. argued that because long-term relative placement is a less restrictive means of protecting the child, the trial court erred in terminating the mother's parental rights. See id. at 1070. Acknowledging that terminating parental rights infringes upon a fundamental liberty interest and requires the Department to demonstrate that termination is the least restrictive means of protecting the child pursuant to Padgett, 577 So.2d at 571, the Second District Court recognized nonetheless that "[t]he clear purpose of the use of the least restrictive means is the `reestablishment of the parent-child bond.'" K.W., 891 So.2d at 1070 (quoting M.H., 866 So.2d at 223).
In that the record in K.W. established that the mother had been given a case plan and adequate time to satisfy the requirements for reunification but failed to do so, that the child had resided with the maternal cousin from the time of the child's infancy, and that the child had formed a parental bond with the cousin while having minimal or no emotional ties with the mother due to limited contact, the appellate panel found no error in the trial court's conclusion that the least restrictive means test did not compel a long-term relative custody arrangement. In other words, the appellate decision affirmed the termination of parental rights and upheld the trial court's determination that the child's manifest best interests called for an adoptive placement with the cousin who *553 wished to adopt the child. See 891 So.2d at 1070.
A review of the record in the instant case shows that K.W. does not conflict with our revised opinion. Clear and convincing evidence presented by family services counselor Ann Mack and GAL Michelle Buckley, and summarized by Department's counsel at the conclusion of the adjudicatory hearing, supports the trial court's findings 1) that Appellant engaged in egregious conduct that endangered the child's life, safety, or physical, mental, or emotional health pursuant to section 39.806(1)(f), Florida Statutes (2004); 2) that he abandoned the child pursuant to sections 39.01(1) & 39.806(1)(b), Florida Statutes (2004); and 3) that Appellant is expected to be incarcerated for a period of time that will constitute a substantial portion of the time before the child will attain age 18, pursuant to section 39.806(1)(d)1., Florida Statutes (2004). Appellant, appearing by telephone from prison, "did not know" why he had failed to inform his family sooner about the existence of his baby daughter. Appellant's current prison release date is April 9, 2018, when the child will be 14-1/2 years old. Appellant provided no suitable explanation for his acts and/or omissions, on the basis of which the Department had properly alleged "egregious conduct" and "abandonment."
Having proved the initial grounds for termination of Appellant's parental rights, the Department had the burden to demonstrate that termination is the least restrictive means of protecting the child from serious harm, for parental rights are a fundamental liberty interest. See M.H., 866 So.2d at 223; L.B., 835 So.2d at 1195. One of the factors to be considered in determining the manifest best interests of the child is "[a]ny suitable permanent custody arrangement with a relative of the child." See § 39.810(1), Fla. Stat. (2004). The trial court had the duty to consider "all relevant factors" before determining whether termination of Appellant's parental rights is in the manifest best interests of the child. See § 39.810, Fla. Stat. (2004). As the child's mother was found to have consented to the termination of her parental rights, and she is not a party to this appeal, we do not disturb the ruling terminating her parental rights over the child.
The child has been in foster care since May 2004. The testimony presented at the adjudicatory hearing established that no relative of the child was willing, available, and suitable for placement, with the possible, but notable, exception of Ms. Fisher. This paternal aunt testified without contradiction that although she had maintained some communications over the years with Appellant, who is her incarcerated brother, Appellant had never even disclosed to her the existence of his baby daughter until around the time when the Department petitioned to terminate Appellant's parental rights over the child in June 2005, when Appellant (by letter) explained his situation and asked if Ms. Fisher would be willing to get involved. Ms. Fisher testified that she was available and willing to adopt Appellant's child and to provide a loving home for her, on a long-term basis if necessary. The witness understood that given Appellant's anticipated prison release date in 2018, she might have custody of the child for a very long time. Ms. Fisher presented unrefuted testimony that immediately after learning of the child's existence, she contacted the appropriate family services authorities to inquire about "the process," of which she had no prior involvement or knowledge.
Ms. Mack's unrefuted testimony at the July 18, 2005, adjudicatory hearing indicated that Ms. Fisher had come forward *554 about two months earlier, after which they had several telephone conversations regarding the possible placement of the child with Ms. Fisher. As of the date of the hearing, the authorities had conducted a background report on Ms. Fisher, which Ms. Mack's supervisor was reviewing. Significantly, the investigation was ongoing, and no final decision had been made yet by the Department regarding Ms. Fisher. Ms. Mack testified that family services would have to look into the circumstances to determine whether Ms. Fisher's home would provide a suitable placement option. The witness opined that until the background report was considered further, no clear legal reason existed to preclude placement of the child with a relative. Given that any other relatives who might have been considered had records that rendered placement of the child with them unsuitable, Ms. Fisher was, on this record, the only relative available for possible placement. Ms. Mack testified it was not until the preceding week that Ms. Fisher had first asked to visit the child. Without contradiction, Ms. Fisher testified that she had not sought contact with the child earlier because she (Ms. Fisher) had no familiarity with the termination process and did not know she could request visitation with the child, who had been in foster care since May 2004. Upon realizing she could seek visitation, Ms. Fisher scheduled a visit with the child, which was scheduled to occur later in the day of the hearing. Ms. Mack testified that as of the hearing date, the Department had not performed a positive approved home study. In fact, no home study of any kind was done.
Among the family service authorities' concerns about Ms. Fisher's family were reports that her teenage daughter had a record for "some type of battery" or "affray" that occurred somewhere other than in the family home. Ms. Fisher testified that another girl at her daughter's "magnet" school had harassed her, resulting in a physical confrontation. Ms. Fisher testified that she and the school principal were communicating to try to resolve the situation. The witness testified also that her 15-year-old son, while hanging out with "the wrong group of guys," had been arrested for shoplifting after someone picked up something in Wal-Mart. As to herself, Ms. Fisher conceded having been arrested for driving with a suspended license some time ago. She had been investigated also for a "returned check" problem. She explained that after she showed the judge a receipt indicating payment of her debt, the charge was dropped, and she was released. Ms. Fisher denied ever saying that her intent was to get custody of Appellant's child until Appellant's release from prison, whereupon she would transfer custody to him. Other than a speculative question being asked of this witness, no evidence was presented bearing on such an intention.
Ms. Fisher testified she had been working in reimbursements/accounting at a children's hospital for about six months, prior to which she had worked six years at Shands Medical Center. Ms. Fisher said she maintained contact with her children's fathers, none of whom had a criminal background. Ms. Fisher testified she was about to close on a new, larger residence for herself and three of her children in Orange Park. The oldest child had just graduated from high school and would be moving out of the home altogether.
The GAL testified she had accepted Appellant's case in late May 2004 and had reviewed the Department's file, the previous GAL's file, and police and court reports. When asked whether any suitable relative was available to provide a permanent home for Appellant's child, the GAL testified that Ms. Fisher had come forward and was a possible placement. The GAL *555 had visited Ms. Fisher's residence very recently and found it "very appropriate." The GAL noted, however, that Ms. Fisher had no history of contact with the child, and that the background checks and home study were not yet completed. The GAL recommended that Appellant's parental rights be terminated, with the goal of outside adoption, unless some relative could pass the home study and background check. The GAL described Ms. Fisher's current residence as a small apartment with two or three bedrooms. The GAL testified that Ms. Fisher told her that she had only recently learned of the child's existence and availability for placement when her brother, Appellant, wrote her about his pending termination proceedings.
After the family services counselor and the GAL testified and the Department rested its case, the trial court orally expressed its concern that the GAL had "waffled on the stand" and had acknowledged the possibility that a suitable placement with a relative would be investigated. After the hearing, the trial court found that no approved home study of any relatives was conducted. The court summarily concluded that the home environment of the paternal aunt, Ms. Fisher, was "inappropriate for the child," given "a pattern of Ms. Fisher having problems with children." The court orally found, without any explanation, that Ms. Fisher was "evasive" on cross-examination.
We affirm the trial court's determination that termination is the least restrictive means of protecting the child from serious harm, and that it is in the child's manifest best interests for parental rights to be terminated. No prospect for "the safe reestablishment of the parent-child bond" was shown. See M.H., 866 So.2d at 223. We remand this case to the trial court to consider the possibility of an adoptive placement, whether with Ms. Fisher or someone else. Like the maternal cousin in K.W., Appellant's sister indicated that she is available and willing to adopt Appellant's child. K.W. and the laws of Florida provide for the trial court to determine whether an adoptive placement would be in the child's manifest best interests. Current law establishes a legislative preference for adoption (when a petition for termination is filed) next, where reunification is inappropriate. See §§ 39.01(51) & 39.621(2), Fla. Stat. (2006).
It goes without saying that, as in K.W., 891 So.2d at 1070, "the facts and the record" must support the trial court's findings. At the adjudicatory hearing in Appellant's termination proceedings, it was clear that the record was incomplete. We conclude from this record that the trial court erred as a matter of law by prematurely excluding Ms. Fisher from consideration for a meaningful role in the life of Appellant's child. The Department admittedly had not completed its review of Ms. Fisher's background check, nor had it conducted any type of home study. No valid reason was provided by the Department for not performing a home study or other appropriate review to determine the paternal aunt's suitability. Immediately upon being notified of the child's existence, Ms. Fisher got involved and communicated with the appropriate individuals. The family services counselor testified she had maintained communications with Ms. Fisher about possible placement of the child with her. Ms. Mack acknowledged that her supervisor was still reviewing the background report. The witness testified that until the report was finalized, no legal reason existed for denying the child's placement with a willing, available, and suitable relative. The GAL's testimony indicated that termination of Appellant's parental rights would be appropriate otherwise, but that relative placement is a matter to be investigated further. Ms. *556 Fisher notified the appropriate state authorities as soon as she discovered the child's existence and before the trial court ruled on the petition to terminate parental rights. By noting the incompleteness of the background check of Ms. Fisher, as well as certain "red flags" raised by the authorities, we offer no opinion as to whether or not the paternal aunt ultimately should be found suitable to adopt the child. K.W. stands for the proposition that the termination of parental rights does not, of itself, exclude the possibility of adoptive placement with a suitable relative. See 891 So.2d at 1070. Because the evidentiary record was incomplete in this case, the trial court was not yet ready to make an informed determination as to the child's ultimate manifest best interests relating to the child's post-termination circumstances. Accordingly, we AFFIRM the termination of Appellant's parental rights and REMAND for further proceedings after the Department has finalized its background home study and presented its findings and recommendations to the trial court. See M.H., 866 So.2d at 223-24; cf. Dep't of Children & Families v. R.G., 821 So.2d 477 (Fla. 4th DCA 2002) (finding trial court erred in changing child's legal and physical custody without a home study), and Dep't of Children & Families v. T.L., 854 So.2d 819 (Fla. 4th DCA 2003) (addressing dependency proceedings and holding that trial court could not place child in out-of-court placement with maternal aunt, absent completion of a home study).
BROWNING, C.J., ERVIN, III, RICHARD W., Senior Judge, concur; BENTON, J., concurs in judgment in part and dissents in part with opinion.
BENTON, J., concurring in the judgment in part and dissenting in part.
I concur in affirming the termination of C.M.'s parental rights with regard to his daughter, A.A. The Department carried its burden to show by clear and convincing evidence that grounds for termination existed under sections 39.01(1) and 39.806(1)(b), (d) and (f), Florida Statutes (2004), and that termination, in order to commit the child to the Department for subsequent adoption, was in the best interests of A.A., within the meaning of section 39.810, Florida Statutes (2004). See N.L. v. Dep't of Child. & Fam. Servs., 843 So.2d 996, 999 (Fla. 1st DCA 2003) ("We are obliged to affirm the termination of parental rights if DCFS has met its burden to present clear and convincing evidence of a statutory ground for terminating parental rights, along with clear and convincing evidence that terminating parental rights is in the best interests of the child.").
Even though Ms. Fisher was not a party below and is not a party on appeal, I also concur to the extent the judgment overturns the part of the decision below that can be read as disqualifying her from adopting A.A. Cf. Stefanos v. Rivera-Berrios, 673 So.2d 12, 13 (Fla.1996) (stating that even a parent whose rights have been terminated may later petition to adopt, if rehabilitated). I am unable to join the judgment, however, and respectfully dissent from it, insofar as it embodies a directive to the lower court or to the department to do more than give due consideration to any application to adopt A.A. that (a) potential adoptive parent(s) may file, so "that all adoptions are handled in accordance with the requirements of law," § 63.022(4)(a), Fla. Stat. (2006), with due regard to any statutory priorities that may pertain. See, e.g., § 63.0425, Fla. Stat. (2006) ("Grandparent's right to adopt"). See generally §§ 39.812, 63.037-.235, Fla. Stat. (2006); Y.H. v. F.L.H., 784 So.2d 565, 573 (Fla. 1st DCA 2001) (discussing limitations on right of intervention *557 in adoption proceedings). As A.A.'s paternal aunt, Ms. Fisher enjoys no special status or priority as a potential, adoptive parent and, if she did, it might "significantly undermine the stability of legal proceedings dealing with the termination of parental rights and adoption proceedings." Stefanos, 673 So.2d at 15 (Harding, J., concurring).