957 So.2d 1203 (2007)
L.D., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee.
No. 3D06-865.
District Court of Appeal of Florida, Third District.
April 11, 2007.
Rehearing and Rehearing Denied June 6, 2007.
*1204 Karl E. Hall, Jr., Miami, for appellant.
Karla Perkins, Miami, for appellee.
Hillary S. Kambour, Guardian Ad Litem.
Before RAMIREZ and LAGOA, JJ., and SCHWARTZ, Senior Judge.
Rehearing and Rehearing En Banc Denied June 6, 2007.
LAGOA, Judge.
Appellant, L.D., the mother, appeals from a final order terminating her parental rights pursuant to sections 39.806 and 39.810, Florida Statutes (2005). L.D. argues that no competent, substantial evidence supported the trial court's finding that she engaged in conduct towards her child that demonstrated her continued involvement would threaten his life, well-being or physical, mental, or emotional health, irrespective of the provision of services. L.D. further argues that termination of her parental rights was not the least restrictive alternative. We agree and reverse the trial court's termination order.
I. FACTUAL HISTORY
L.D., the mother of four children, has struggled with alcohol addiction.[1] In 2003, L.D. left her second child ("D.D.2") with a relative. After she failed to return, D.D.2 *1205 was brought into state care and the Department of Children and Family Services ("the Department") issued a pick-up order for L.D.'s third child ("D.D.3"), the subject of these parental termination proceedings. L.D. brought D.D.3 to the Department on her own accord.
After a referral to drug court, L.D. entered into a consent plea regarding D.D.2, in which plea she admitted to her substance abuse problem. After completing a residential treatment program, L.D. was placed in a halfway house, the Jefferson Reaves House ("JRH"). D.D.3 was placed in L.D.'s care while she lived at JRH. While at JRH, however, and at all other times she resided in residential facilities, the Department failed to aid L.D. in finding employment and affordable housing.[2] As a result, L.D. was required to leave JRH because she could not find employment on her own and the Department removed D.D.3 from L.D.'s custody.
Because L.D. had been unable to secure housing and employment, the Department found her non-compliant with her case plan and initiated termination proceedings. At the same time, L.D. voluntarily entered the Susan B. Anthony substance abuse treatment center. In the aftermath of Hurricane Wilma, when the center was essentially shut down, L.D. suffered a relapse. At the time of trial, L.D. had been sober four months, and her treating therapist testified that she would complete the program within six months.
II. ANALYSIS
The trial court found that L.D.'s involvement with D.D.3 threatened "the life, safety, well-being or physical, mental or emotional health of the child irrespective of the provision of services." The record before us, however, contains no competent, substantial evidence to support such a conclusion.
Prior to terminating a parent's rights under section 39.806(1)(c), Florida Statutes (2005), three evidentiary requirements must be met. "First, the trial court must find [that] the [child's] life, safety, or health would be threatened by continued interaction with the parent, regardless of the provision of services. `In essence, the trial court must find that any provision of services would be futile or that the child would be threatened with harm despite any services provided to the parent.'" M.H. v. Department of Children and Families, 866 So.2d 220, 222 (Fla. 1st DCA 2004). Moreover, "there must be a nexus between the conduct and the abuse, neglect, or specific harm to the child." D.P. v. Department of Children and Family Servs., 930 So.2d 798, 801 (Fla. 3d DCA 2006). Second, the Department must show that there is no reasonable basis to believe a parent will improve. See D.P., 930 So.2d at 802; M.H., 866 So.2d at 222-23. Third, the Department must show that termination is the least restrictive means of protecting a child from serious harm. D.P., 930 So.2d at 802.
Here, the Department failed to meet any of these evidentiary requirements. With respect to the first requirement, the record contains no evidence that L.D.'s involvement with D.D.3 threatened him with harm of any kind. Significantly, there is no evidence in the record to support a nexus between the mother's conduct of drinking alcohol and harm to the child. Although the trial court relied on a factual finding that L.D. is "a long time drug addict who does not exercise good judgment," courts, including this one, have held that "a parent's drug addiction, standing *1206 alone, is an insufficient ground upon which to terminate parental rights." D.P., 930 So.2d at 802 (quoting M.H. v. Department of Children & Families, 866 So.2d 220, 222 (Fla. 1st DCA 2004)). Instead, the Department must prove by clear and convincing evidence that the child's life, safety or health will be endangered by further contact, that improvement is exceedingly unlikely, and that termination is the least restrictive mans of protecting the child.
In this case, the Department failed to meet this exacting burden. Although L.D. suffers from alcohol addiction, for which she is receiving treatment, there is no record evidence that she poses any risk of harm to the children at this time. L.D.'s case manager has observed her interactions with D.D.3, as well as with her other children, and testified that L.D. is a loving parent with a strong bond to her children.
The Department also failed to meet the second evidentiary requirement. Every witness testified that L.D. has a chance to improve. Despite her relapses, L.D. "immediately self-referred into another inpatient facility." M.H., 866 So.2d at 223 (original emphasis). "This indicates [L.D.'s] strong desire to overcome her addiction and parent her children, and demonstrates a reasonable basis to believe [L.D.'s] problems could be improved, despite DCF's utter failure to provide her with requested, necessary services." Id.
Here, the trial court essentially fashioned a per se rule that termination is proper whenever a parent suffers a relapse while in treatment, regardless of whether it was an isolated incident. The Supreme Court, however, has strongly disapproved of per se rules in the parental rights context, instead favoring a flexible approach that analyzes the termination petition amongst the totality of the circumstances. R.F. v. Department of Children and Families, 770 So.2d 1189, 1194 (Fla. 2000). In reviewing those circumstances, it is clear that a parent need not demonstrate that she is a "model parent":
Parents have a fundamental liberty interest in determining the care and upbringing of their children free from the heavy hand of government paternalism. This liberty interest does not evaporate simply because they have not been model parents. The State of Florida does not demand perfection from its families. Rather, the State demands that children be protected from abuse and from the substantial risk of imminent abuse.
J.C. v. Department of Children and Family Servs., 937 So.2d 184, 193 (Fla. 3d DCA 2006) (Shepherd, J. dissenting) (citations and quotations omitted).
The record demonstrates L.D.'s commitment to both bettering herself and capably raising her child. The trial court, however, punished L.D. for a relapse that on this record may have merely amounted to a single drink and certainly did not result in harm to the child. L.D. has completed a parenting class, and has demonstrated her parenting skills by aiding the other parents at the Susan B. Anthony center. Moreover, the guardian ad litem, who testified that termination is proper, never met the mother or observed her interact with her children. L.D. has actively sought employment, but without the Department's aid she has been unsuccessful. On this record, we cannot find that there exists competent, substantial evidence to support the trial court's finding that "it would be futile to continue to offer [L.D.] services."
Finally, the Department failed to prove that termination of L.D.'s parental rights is the least restrictive means of protecting the child. "This [least restrictive means test] requires the court to utilize measures short of termination if such measures can permit a safe re-establishment of the parent-child bond." E.R. v. Department of Children and Family *1207 Servs., 937 So.2d 1196, 1199 (Fla. 3d DCA 2006). As previously noted, the record evidence shows that L.D. is a loving parent with a strong bond to D.D.3.
Additionally, although the trial court found that there was "no suitable permanent custody arrangement with a relative of the child" [and thus] "termination of parental rights as to the mother is the least restrictive alternative," the record does not contain competent, substantial evidence to support that finding. Here, L.D.'s sister expressed her desire to have the child placed with her. No home study or other investigation was ever conducted to determine the suitability for this relative placement. The trial court, however, rejected the maternal aunt out-of-hand because she came forward late in these proceedings and because two of her own children lived with her mother. The aunt, however, testified that her two sons lived with her mother because the school district her mother lived in was better suited for their needs. Accordingly, because the possibility of a relative placement was disregarded without first conducting a home study, and no other relative was even contacted, the finding that termination of L.D.'s parental rights is the least restrictive means of protecting the child is not supported by competent, substantial evidence.
V. CONCLUSION
Because termination of L.D.'s parental rights is not supported by competent, substantial evidence, the trial court's order terminating parental rights is reversed. The matter is remanded for the case plan to be extended, and grant L.D. an opportunity to regain reunification with her child.
Reversed and remanded.
NOTES
[1] L.D.'s third child is the focus of these proceedings. Her first child has been adjudicated dependent and placed with his father. L.D.'s second child has been placed with a maternal relative and her fourth child remains in her care.
[2] To the extent that L.D. may have been given some referrals at other times, the record is devoid of evidence as to the dates and types of services L.D. may have been offered.