# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D21-29
_____

B.V., Father of E.E.V., A Minor
Child,

    Appellant,

    v.

DEPARTMENT OF CHILDREN AND
FAMILIES,

    Appellee.

_____

On appeal from the Circuit Court for Clay County.
Steven B. Whittington, Judge.

September 17, 2021


M.K. THOMAS, J.

B.V. appeals from a final order terminating his parental rights pursuant to section 39.806(1)(c), Florida Statutes. B.V. raises three issues on appeal: (1) the trial court's finding that Appellant engaged in conduct towards the child that demonstrated his continuing involvement would threaten his life, safety, well-being or physical, mental, or emotional health, irrespective of the provision of services, is not supported by competent, substantial evidence; (2) the trial court erred in finding termination was in the child's best interest; and (3) the trial court erred in finding termination was the least restrictive means of protecting the child from harm. Finding no error, we affirm the final order. However,

given B.V. was deported and participated in a case plan following his deportation, we write to explain how the trial court's finding that termination was appropriate under section 39.806(1)(c) is supported by competent, substantial evidence.

*Facts*

The child, born February 26, 2018, was taken into custody by the Department on July 18, 2018, and placed with a foster family. The Department became involved after it received reports of abuse. The shelter petition stated that B.V.'s address was unknown and the child was residing with its mother. The mother, who is married to B.V., apparently had issues with substance abuse, and there were reports of violence in the home, including an altercation involving B.V. Shortly after the child was sheltered, B.V. was deported to El Salvador. B.V. was granted supervised visitation of three, ninety-minute visits per week.

Although the mother did not complete her case plan tasks and subsequently surrendered her parental rights, B.V. engaged in services in El Salvador, such as completing a parenting class and anger management. Initially, B.V. indicated that he did not wish to be reunited with the child in El Salvador, but instead, he was attempting to return to the United States.

In May 2019, the Department indicated that it recommended an amendment to the case plan goal to adoption. At a hearing the following month, B.V. expressed for the first time a desire to have the child sent to him in El Salvador.

Thereafter, an international home study was completed on the father's residence in El Salvador, which was not approved. During the home study, B.V. again indicated that although he wished to be reunited with his son, he did not want his son in El Salvador due to the conditions there. B.V. reported working in the fields and operating a truck three days per week with a monthly income of $160.00. His house is made of mixed materials (sheet, cement, wood, plastic). It does not have a shower, and the toilet is compost and located outside. Bathing is done outdoors. There is no drinking water system. It was also noted that there is no health center in the community, but a health care worker visits the community once a week. If there is a medical emergency, a resident must leave

2

the community and travel to San Salvador. The area was described as a high-risk community due to the presence of gangs in the area. It was determined that the house was not adequate for the child due in part to the lack of medical care and the child suffering from asthma.

On June 30, 2020, the Department filed a petition seeking to terminate B.V.'s parental rights pursuant to section 39.806(1)(c), claiming the child was at risk of future harm irrespective of the provision of services. The Guardian ad Litem filed a report opining that termination of parental rights was in the child's manifest best interest. Prior to the hearing on the termination petition, the parties stipulated that "[i]t is unknown if or when [B.V.] will be able to return to the United States to care for his Minor Child."

The evidence showed B.V. was likely deported because his visa had expired. The child was months old when sheltered and almost three at the time of the hearing. During that time, B.V. would participate in video visitation two days a week for fifteen minutes each. B.V. speaks Spanish, and the child was either too young to communicate or unable to understand Spanish as his foster family speaks English. The child's three older siblings were placed with the same foster family and were subsequently adopted. The child had bonded with his siblings and views his foster parents as parental figures. The child does not identify B.V. as his father. The foster parents and the Guardian ad Litem all agreed that it would be detrimental to the child at this point to remove him from the foster home. The Guardian ad Litem believed termination of B.V.'s parental rights was in the child's best interest given the amount of time the child was in foster case and the need for permanency. The foster parents indicated their desire to adopt the child.

B.V. expressed that he hoped to return to the United States and be reunited with the child here. The Department believed that upon his return, B.V. intended to live with the mother, as would be required by his visa, which the Department found concerning because the mother's parental rights had been terminated, and the child could not safely be placed in a home in which she resides. For his part, B.V. claimed he planned to separate from the mother upon his return; however, he acknowledged that his resident visa

application is based on his marriage to the mother, and he had not informed Immigration of his plan to separate. According to B.V., he is awaiting an appointment for an interview at the Embassy.

The trial court found by clear and convincing evidence that termination of B.V.'s parental rights was appropriate under section 39.806(1)(c), that termination was in the manifest best interest of the child, and that termination was the least restrictive means of protecting the child from harm.

*Analysis*

Section 39.806(1)(c) provides that termination of parental rights may be established under the following circumstance:

> When the parent or parents engaged in conduct toward the child or toward other children that demonstrate that the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services.

To terminate parental rights under this section, the trial court must find: (1) the child's life, safety, or health would be threatened by continued interaction with the parent, regardless of the provision of services; (2) there is no reasonable basis to believe the parent will improve; and (3) termination is the least restrictive means of protecting the child from harm. *M.H. v. Dep't of Children & Families*, 866 So. 2d 220, 222–23 (Fla. 1st DCA 2004).

In terminating B.V.'s parental rights, the trial court noted the unique circumstances presented by this case. In support of its decision, the trial court stated:

> Generally, under a subsection 39.806(1)(c) case, it is alleged that a parent has engaged in past behavior, such as drug or alcohol abuse or domestic violence, and that such behavior is likely to continue in the future despite the provision of services. That is not the case here. Instead, the past behavior was Father's deportation and his subsequent complete inability to parent the child. In the two-and-a-half years since being deported, Father has

4

been unable to remedy this circumstance. As a result, [the child] has been raised and cared for in foster care. During the time that is often regarded as the most formative of a child's life, [the child] has completely bonded with the [foster] family. [The child] naturally views [the foster parents] as his father and mother.

The trial court further opined that the child regarded the other children in the home as his siblings and would be devastated if he were removed from the foster home. The trial court did not find B.V.'s testimony that he has a "very good" relationship with the child to be credible. Rather, the trial court concluded that the "[f]ather has no relationship with" the child. Ultimately, the trial court held that delaying permanency any longer would cause harm to the child, stating, "[t]o allow [the child] to continue for some indefinite time into the future would only cause [the child] to face greater harm than he would suffer now if reunification occurred."

Competent, substantial evidence supports the trial court's findings. There is no debate B.V. was deported to El Salvador when the child was only several months old, and the child has lived with his foster parents most of his life. Both the foster mother and Guardian ad Litem testified as to the lack of communication and relationship between the child and B.V. Except for B.V., everyone agreed that removing the child from the foster home at this point would be detrimental to the child.

Regardless, B.V. essentially argues that his deportation does not constitute past behavior that threatens the child, and there is no basis to support the conclusion that B.V.'s situation will not improve. There is no case law in Florida addressing termination of parental rights where the parent was deported but complied with a case plan. We find persuasive several Texas cases in which the trial courts likened deportation to incarceration, given that in both circumstances, the parent cannot reside with the child, is not in the child's daily life, and is in many ways unable to parent the child. *See In re E.N.C.*, 384 S.W. 3d 796 (Tex. 2012) (noting that deportation is like incarceration in that the parent is no longer available to reside with their child in their home in the United States); *Interest of H.J.Y.S.*, 2019 WL 8071614 (Tex. Ct. App. 2019) (noting that deportation is like incarceration as both are a

consequence of an action, and in both cases, a parent is absent from the child's daily life and is unable to provide support).

Florida law specifically addresses termination of an incarcerated parent's rights. Pursuant to section 39.806(1)(d)3., Florida Statutes, an incarcerated parent's parental rights may be terminated if, among other things, the court determines by clear and convincing evidence that continuing the parental relationship with the parent would be harmful to the child and, for this reason, that termination of parental rights of the incarcerated parent is in the best interest of the child. When determining harm, the court considers the age of the child; the relationship between the child and the parent; the nature of the parent's current and past provisions for the child's developmental, cognitive, psychological, and physical needs; the parent's history of criminal behavior, which may include the frequency of incarceration and the unavailability of the parent to the child due to incarceration; and any other factor the court deems relevant. *Id.*

While incarceration is a factor the court may consider in deciding whether to terminate parental rights, incarceration alone is insufficient grounds to terminate parental rights. *See In re T.B.*, 819 So. 2d 270, 272 (Fla. 2d DCA 2002). We find this rule should also apply to deportation. Thus, deportation alone cannot be a ground for termination of parental rights. *See In re E.N.C.*, 384 S.W. 3d at 805; *Interest of H.J.Y.S.*, 2019 WL 8071614 at 5.

In *Department of Children and Families v. J.S.*, 183 So. 3d 1177, 1185–86 (Fla. 4th DCA 2016), the court held that an incarcerated father's continued parental relationship with his child would be contrary to the child's best interest, providing a basis for termination of the father's parental rights, where the father had no relationship with the child, did not provide for the child's needs in any way except for the involuntary distribution of his Social Security benefits, was incarcerated for committing armed burglaries and felony assault, and would not be available to parent the child for several years due to his incarceration.

Similarly, in *D.S. v. Department of Children and Families*, 164 So. 3d 29, 30 (Fla. 4th DCA 2015), the court affirmed termination of parental rights after it was determined the incarcerated parent

did not have a relationship with the child. The court opined as follows:

> As to P.S., the state proved by clear and convincing evidence that the child is thriving in his foster family's care and does not wish to see his father. The father has not been able to maintain much contact with P.S. Thus, the father's incarceration has been significant in that P.S., at a young age, has become bonded with the foster family to the exclusion of D.S. The foster parents wish to adopt P.S. To deprive him of this continuing relationship with his foster parents would prevent him from achieving a permanent and stable home. Thus, the court's conclusion that the state proved a ground for termination is supported by competent, substantial evidence. Moreover, for these same reasons, we conclude that termination was both in the manifest best interest and the least strictive means to prevent harm to P.S.

*Id.* at 34–35.

Adopting the reasoning of our colleagues in the Fourth District, we note that termination here is not based solely on B.V.'s deportation, but rather the effects of that deportation, such as the continued absence on the child and B.V's inability to parent. Additionally, subsection 39.806(1)(d) allows for termination of an incarcerated parent's rights where continuing a parental relationship would be harmful to the child. This is similar to the standard set forth in subsection (1)(c), which is at issue in the instant case. Subsection (d) provides factors to be considered when determining harm to the child. When considering those factors here, termination is appropriate. The child was only months old when B.V. was deported and he was placed into foster care. He is now three years old. The child has no relationship with B.V. and does not identify him as a parent. The child and B.V. do not speak the same language. There is no evidence B.V. has ever provided for the child's emotional or physical needs. Evidence supports that the child would be devastated if he were now removed from the foster parent's home. Additionally, although B.V. testified that he is attempting to return to the United States, he stipulated that he does not know if or when that will occur. Further complicating his

reentry to the United States, B.V. testified that his resident visa application is based on his marriage to the mother. However, B.V. plans on separating from the mother upon his return, which could put his visa at risk. If he does not separate from the mother, the child cannot be returned to his care given the mother's issues and termination of her parental rights. There are no services the Department could provide which would assist the father in rectifying his immigration issues or the problems that arise from the same.

In many ways, this case is similar to *J.S.* and *D.S.* in which the court found termination of parental rights was appropriate. In those cases, as is the case here, there is a complete lack of relationship between the child and B.V., and B.V. does not have the ability to care for the child. Additionally, the child has formed a strong bond with his foster parents who desire to adopt him.

*Conclusion*

It is clear that B.V.'s deportation and subsequent inability to return to the United States or parent the child in any meaningful way "threatens the . . . mental, or emotional health of the child irrespective of the provision of services." § 39.806(1)(c), Fla. Stat. Thus, we find that the trial court did not err in holding that the Department proved termination under section 39.806(1)(c) was appropriate. Additionally, as found by the trial court, to delay permanency any further would only cause further harm to the child, which is contrary to the purpose of the chapter. *See* § 39.001(1)(h), Fla. Stat. (A purpose of this chapter is "[t]o ensure that permanent placement with the biological or adoptive family is achieved as soon as possible for every child in foster care and that no child remains in foster care longer than a year."); *S.M. v. Fla. Dep't of Children & Families*, 202 So. 3d 769, 782–83 (Fla. 2016) (explaining that there "is a strong policy incentive in achieving permanency for children in care as quickly as possible" and that lack of permanency causes harm to a child). Accordingly, we affirm the final order terminating B.V.'s parental rights.

AFFIRMED.

ROBERTS, J., concurs; B.L. THOMAS, J., concurs in result only.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____


Michael A. Tupper, Tupper Law, P.A., Jacksonville, for Appellant.

Ward L. Metzger, Department of Children and Families, Jacksonville; Thomasina F. Moore and Laura J. Lee, Statewide Guardian ad Litem, Tallahassee, for Appellee.