IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

J.P., mother of T.P., a minor child,

      Appellant,

v.

FLORIDA DEPARTMENT OF
CHILDREN AND FAMILIES,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-3023

Opinion filed January 15, 2016.

An appeal from the Circuit Court for Santa Rosa County.
Marci L. Goodman, Judge.

Crystal McBee Frusciante, Sunrise, for Appellant.

Dwight O. Slater, Children's Legal Services, Department of Children and Families,
Tallahassee, for Appellee.

BILBREY, J.

The mother J.P. appeals the judgment of involuntary termination of parental

rights as to her daughter T.P. Using the "highly deferential" standard of review

which we apply to termination of parental rights cases, we affirm. See C.D. v. Fla.

Dep't of Children & Families, 164 So. 3d 40, 42 (Fla. 1st DCA 2015).

## Facts

This case started as a dependency without shelter after the child T.P. was hospitalized twice in August 2012 for nephrotic syndrome, a potentially fatal medical condition.[1] Nephrotic syndrome means that the kidneys do not function properly and leak protein into the body causing the retention of fluid. A child suffering from the syndrome is more susceptible to infection. Untreated the syndrome has a 30 to 40 percent mortality rate. Dr. Edward Kohaut, the child's pediatric nephrologist, testified that Albustix® strips are necessary to test the protein levels in the urine in a child with nephrotic syndrome to determine if the child is relapsing and in need of medical treatment. The Albustix® strips cost approximately a dollar a day according to Dr. Kohaut. He also testified that although they are not covered by Medicaid, parents need to make sure the Albustix® strips are provided even if the parent has to cut back on something. Dr. Kohaut also testified that a proper diet is very important for children with the syndrome, and that sodium and fat intake must be limited.

The child was admitted to the hospital four times while in the mother's care. The first time in August 2012 was when the nephrotic syndrome was diagnosed, so that admission could not be attributed to medical neglect. However, the next

---

[1] The then two and a half year old child had not been to the doctor for approximately two years and was behind on her immunizations at the time of the hospitalization.

hospitalization immediately thereafter in August 2012 was due to the mother's failure to provide the medication prescribed during the first hospital visit.[2] It was at this point that the Department of Children and Families became involved by filing a petition for dependency without shelter.[3] The child was adjudicated dependent on October 24, 2012.

The child was again hospitalized in October 2012 and April 2013. At the time of the October 2012 and April 2013 hospitalizations, the mother was not using the Albustix® strips to test for protein in the child's urine. The mother stole Albustix® strips from the hospital, but never asked the Department for help in providing the strips. The trial court found that the mother could have purchased the strips if she had made it a priority.[4] The mother's own testimony expressed her

---

[2] The mother did take the child back to the hospital right away after the child's first hospitalization. However, had the mother provided the child with the prescribed medication after the first hospitalization, the second hospitalization may have been unnecessary and the child then likely would have not come into the dependency system in August 2012.

[3] The mother also had substance abuse issues at the time the dependency petition was filed. During the pendency of the case she struggled with substance abuse, treatment, and relapse; drug dealing; unemployment; and housing instability. By the time of the termination of parental rights trial, she was apparently able to address those additional issues, although it took until the end of 2014 — substantially delaying any potential reunification even if the medical issues had been addressed.

[4] While termination of parental rights cannot be premised on a parent's lack of financial resources, here the trial court's factual finding on the mother's ability to pay has record support, and we will not reweigh the evidence. T.C. v. Dep't of Children & Families, 961 So. 2d 1060 (Fla. 4th DCA 2007).

3

opposition to receiving help from the Department or FamiliesFirst (the community-based care provider for the Department in Santa Rosa County), including refusing to ask for help in purchasing the strips.

The mother admitted that it was her fault that the child had a relapse in April 2013, and Dr. Carol Sekhon testified that the child protective team had a positive finding of medical neglect by the mother in April 2013. The then three-year-old child gained fourteen pounds in one month due to fluid retention associated with her nephrotic syndrome prior to the April 2013 hospitalization. Dr. Kohaut testified that the child had been in prolonged relapse at least a week before the child was hospitalized, and she was at risk for overwhelming sepsis and death. The child was removed from the mother and sheltered in medical foster care in April 2013 after the relapse and fourth hospitalization.

Following the child's removal from the mother, the case plan goal changed to reunification. The case plan tasks in the reunification case plan required the mother to follow any recommendation in the child's medical treatment plan and noted that a barrier to reunification was the mother needing to follow the low sodium diet.[5] FamiliesFirst provided transportation so the mother could visit with

---

[5] There were other case plan tasks for the mother. Although the mother's delay in completing the other case plan tasks had the effect of delaying any attempted reunification even if the medical issues had not been present, the termination of parental rights final judgment was based on the mother being a continuing danger

the child and also so the mother could shop for appropriate food for the child to address the child's medical needs during the mother's visitation. The mother was also provided with training on nephrotic syndrome, reading food labels, and the importance of providing the child with an appropriate diet to address her nephrotic syndrome.

Although the evidence was in conflict, the trial judge heard evidence which supports the finding that after removal, the mother was still not compliant with feeding the child an appropriate diet during the mother's visitations, putting the child's health at risk. The mother failed to comply in spite of the mother being trained on the risks of the child not following the diet. The child had a bloated stomach at times when coming back from visits with the mother, as well as elevated protein levels.[6] During visitations the mother provided the child with food that violated the dietary restrictions including on occasion pizza and potato chips. The mother also overfed the child. Additionally and perhaps most importantly, the mother expressed to various people that she was not supportive of the dietary restrictions necessary to address the child's medical issue. The mother was not able to maintain an appropriate diet for the child during visits, so longer

to the child by not addressing the child's medical issue.

[6] Although Dr. Kohaut testified that relapses could be caused by other factors than diet, the trial court had evidence that the elevated protein in the child's urine and relapses coincided with the mother feeding the child during visits.

visitation or reunification was not able to occur because it would put the child's health at risk.[7]

Over a year after removal the Department filed the petition to terminate the mother's parental rights to T.P. The termination of parental rights adjudication hearing did not commence until March 16, 2015, and then concluded on April 13, 2015, almost two years after removal. Following the adjudication hearing, the court entered the eighteen-page final judgment with detailed findings of fact which is the subject of the mother's appeal.

## Standard of Review

While the trial court must find that the evidence is clear and convincing, this court's review is limited to whether competent, substantial evidence supports the trial court's final judgment, and whether the appellate court "cannot say that no one could reasonably find such evidence to be clear and convincing." N.L. v. Dep't of Children & Family Servs., 843 So. 2d 996, 1000 (Fla. 1st DCA 2003). This standard of review is highly deferential. Id. Put another way, "a finding that evidence is clear and convincing enjoys a presumption of correctness and will not be overturned on appeal unless clearly erroneous or lacking in evidentiary

---

[7] The mother was reunified with one of her other children. While this is laudable, that child does not suffer from the potentially fatal nephrotic syndrome. The mother had to address the medical issues as to T.P. before she could be safely reunified, and there was evidence for the trial court to find she did not do so.

6

support." J.E. v. Dep't of Children & Families, 126 So. 3d 424, 427 (Fla. 4th DCA 2013) (quoting D.P. v. Dep't of Children & Family Servs., 930 So. 2d 798, 801 (Fla. 3d DCA 2006)).

## Standard for Terminating Parental Rights

There are three requirements to terminate parental rights. First, the Department must prove statutory grounds under section 39.806, Florida Statutes. See Rathburn v. Dep't of Children & Families, 826 So. 2d 521, 523 (Fla. 4th DCA 2002). Here the Department sought termination of the mother's parental rights pursuant to subsection 39.806(1)(c), Florida Statutes, which authorizes,

> When the parent or parents engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services. Provision of services may be evidenced by proof that services were provided through a previous plan or offered as a case plan from a child welfare agency.

Prior to terminating a parent's rights under subsection 39.806(1)(c), two requirements must be met,

> First, the trial court must find the children's life, safety, or health would be threatened by continued interaction with the parent, regardless of the provision of services. See In re C.W.W., 788 So. 2d 1020, 1023 (Fla. 2d DCA 2001). "In essence, the trial court must find that any provision of services would be futile or that the child[ren] would be threatened with harm despite any services provided to the parent." Id.; see also N.L. v. Dep't of Children & Family Servs., 843 So. 2d 996, 1002 (Fla. 1st DCA 2003).

7

M.H. v. Dep't of Children and Families, 866 So. 2d 220, 222 (Fla. 1st DCA 2004). Second, to terminate parental rights under subsection 39.806(1)(c), the Department must show that there is no reasonable basis to believe a parent will improve. See id. at 222-23.

In addition to providing a statutory ground, the second requirement before parental rights may be terminated is a showing by the Department that termination is in the child's manifest best interest pursuant to section 39.810, Florida Statutes. The third and final requirement is that to pass constitutional muster, termination of parental rights must meet the least restrictive means test. See L.D. v. Dep't of Children and Family Servs., 957 So. 2d 1203, 1205 (Fla. 3d DCA 2007); Padgett v. Dep't of Health & Rehab. Servs., 577 So. 2d 565, 571 (Fla. 1991).

**First Requirement — Analysis of Termination under 39.806(1)(c)**

The Department's statutory ground for termination in this case was section 39.806(1)(c), Florida Statutes. There was ample support in the record for the trial court to conclude that the mother's continuing involvement with the child puts the child's life, health, or safety at risk regardless of any additional support provided to the mother. The mother had an opportunity to change, but remained opposed to allowing the Department or FamiliesFirst to help, denied she needed help, and did not appropriately address the child's dietary needs in spite of being provided the knowledge and support to do so. The mother had almost two years from removal

8

and over two and a half years from commencement of the dependency action to address the child's medical issue, but the evidence supports the trial court's finding that she failed to do so.

There was evidence to support the trial court's finding that the mother was not supportive of the child's dietary restrictions. The trial court found, and the record supports, that "[t]he mother has not demonstrated any change in circumstances that led to the need for the child's removal." Consequently, the trial court's finding "that further efforts by the Department to rehabilitate the mother would be futile" is also based on record evidence. The trial court therefore had grounds under section 39.806(1)(c), Florida Statutes, to terminate the mother's parental rights. See L.J. v. Fla. Dep't of Children & Families, 33 So. 3d 99 (Fla. 1st DCA 2010); M.H., 866 So. 2d at 222-23. On appeal, the mother essentially asks us to reweigh the evidence heard by the trial court. That is not our appropriate role. N.L., 843 So. 2d at 999-1000.

## Second Requirement — Manifest Best Interest

The second requirement was for the Department to prove termination of parental rights was in the child's manifest best interest. There are eleven manifest best interest factors to be considered under section 39.810, Florida Statutes. A trial court must consider and evaluate all of the factors. "Full and accurate fact finding is essential not only on the question whether [the Department] has authority to

9

terminate parental rights but also on the question whether it is in the child's best interest to do so." C.C. v. Dep't of Children & Family Servs., 812 So. 2d 520, 523 (Fla. 1st DCA 2002).

Although it might be beneficial for an appellate court to know how much weight the trial court assigned to each factor, there is no requirement in the statute to do so. Instead all that is required is that the trial court make findings sufficient for an appellate court to determine whether an abuse of discretion has occurred. J.S. v. Florida Dep't of Children & Families, 18 So. 3d 1170 (Fla. 1st DCA 2009) (citing State, Dep't of Children & Families v. S.H., 734 So. 2d 1080, 1082 (Fla. 1st DCA 1999)).

Here the trial court made full findings on all eleven factors and found that overall, termination of the mother's parental rights was in the child's manifest best interest. The findings were sufficient for appellate review, and there was evidence to support the findings. Reweighing the evidence at the appellate level would violate the highly deferential standard we must apply. N.L., 843 So. 2d at 999.

### Third Requirement — Least Restrictive Means

The third and final consideration is whether the termination of parental rights passes the least restrictive means test. In spite of the name, "least restrictive

means" does not mean that no alternative to termination of parental rights is conceivable by a court.[8] As stated in Padgett,

> We note that because parental rights constitute a fundamental liberty interest, the state must establish in each case that termination of those rights is the least restrictive means of protecting the child from serious harm. This means that [the Department] ordinarily must show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such plan for the present child.

577 So. 2d at 571.

The least restrictive means test under Padgett is therefore satisfied if a case plan is offered to a parent to address the issues which caused the child to become dependent, and services are provided to the parent to rehabilitate the parent and reunite the family.[9] Id. Here services were offered to the mother, and although she was able to complete various other case plan tasks, she was not able to comply with the key case plan task of addressing the child's medical needs by supplying an appropriate diet during visitation.

---

[8] If we were using an "inconceivable" test then the final judgment of termination of parental rights would fail here and in almost every case. We can speculate on what the Department or FamiliesFirst could have done with unlimited resources or unlimited time, but that is not the least restrictive means test. See Statewide Guardian Ad Litem Program v. A.A., 171 So. 3d 174, 177 (Fla. 5th DCA 2015) (explaining that the least restrictive means test does not mean that all available alternatives to termination of parental rights have been exhausted).

[9] The least restrictive means test can be satisfied by other proof such as showing egregious conduct of a parent towards a child. See In re E.R., 49 So. 3d 846 (Fla. 2d DCA 2010). Egregious conduct is not alleged here. See §39.806(1)(f), Florida Statutes.

11

Following <u>Padgett</u>, this Court and others have imposed additional requirements for termination of parental rights to pass the least restrictive means test. "The least restrictive means test in the context of termination of parental rights requires those measures short of termination be utilized if such measures will permit the safe reestablishment of the parent-child bond." <u>M.H.</u>, 866 So. 2d at 223; <u>C.M. v. Dep't of Children & Families</u>, 953 So. 2d 547 (Fla. 1st DCA 2007).

In this case, the trial court analyzed the least restrictive means test including the requirements imposed subsequent to <u>Padgett</u>, and found that the "mother's actions and inactions, as established by the evidence, demonstrate the child cannot be safely reunited with her and that the termination of parental rights is the only safe means to protect her." The trial court noted that the mother has been given "an abundance of time to demonstrate she can properly care for the child" but the child's health would be at risk if reunited with the mother. The trial court had ample record evidence to make this finding and the least restrictive means test is therefore satisfied. "[T]he [parental] right is not absolute but is subject to the overriding principle that it is the ultimate welfare or best interest of the child which must prevail." <u>Padgett</u>, 577 So. 2d at 870 (citing <u>In re Camm</u>, 294 So. 2d 318, 320 (Fla. 1974)).

## Conclusion

12

For the reasons set forth above, we believe the trial court's findings are supported by competent, substantial evidence. A statutory ground for termination of parental rights was proven, evidence supports the court's finding that termination is in the child's manifest best interest, and termination of parental rights passes the least restrictive means test.

AFFIRMED.

BENTON and OSTERHAUS, JJ., CONCUR.