IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

W. W., FATHER OF V.H. and
V.H.J.,  MINOR CHILDREN,

        Appellant,

v.

DEPARTMENT OF CHILDREN
AND FAMILIES,

        Appellee

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-4707

_____/

Opinion filed May 5, 2017.

An appeal from the Circuit Court for Leon County.
Karen A. Gievers, Judge.

Terry P. Roberts of Law Office of Terry P. Roberts, Tallahassee, for Appellant.

Karla Perkins, Appellate Counsel, Department of Children and Families, Miami, for Appellee.

Kelly A. Swartz, Appellate Counsel, Guardian ad Litem Program, Sanford.

PER CURIAM.

      W.W., the natural father of V.H. and V.H.J., appeals a final order terminating his parental rights over the children.  Because we conclude termination was not the least restrictive means of protecting the children from harm, we reverse.

The twin children were born in Mississippi in 2010, and moved to Florida with their mother shortly thereafter. The twins and their two half-siblings lived in Florida in their mother's care until 2015, except for a brief period in 2012 when they were sheltered due to allegations of neglect. In May 2011, W.W. was sentenced to fourteen years' imprisonment in Mississippi for sale of cocaine. W.W. had no contact with the twins prior to his incarceration. His paternity was not established until 2012. The only time W.W. met the twins in person was in 2014, when the mother brought the twins to Mississippi while W.W. was on a furlough pass from prison.

In April 2015, the Department of Children and Families (DCF) petitioned for emergency shelter placement for the mother's four children, due to reports of drug use by the mother, neglect, and unsafe conditions in the home.[1] After a hearing, the twins were sheltered and placed in foster care. Shortly thereafter, the twins were adjudicated dependent. A case plan with the goal of reunification was approved by the court. The case plan included numerous tasks for the mother as the custodial parent. It also required W.W. to have phone visitation with the twins twice a week and to make the case manager aware of any problems reaching the twins at the foster parent's home. Over the next twelve months, the court conducted several judicial

---

[1] For purposes of this opinion, the factual and procedural history addresses only the twins.

review hearings, and several case plan updates were submitted. W.W. appeared by telephone at every hearing. The evidence is undisputed that W.W. did not make the required phone calls to comply with the case plan. He testified it was because he was only able to make collect calls in prison.

Twelve months after the children were adjudicated dependent, DCF sought to terminate the parental rights of the mother and W.W. over the twins. The petition alleged three statutory grounds for terminating W.W.'s rights: (1) abandonment under section 39.806(1)(b), Florida Statutes (2016); (2) failure to comply with the case plan under section 39.806(1)(e)1., Florida Statutes (2016); and (3) harm from a continuing relationship with the incarcerated parent under section 39.806(1)(d)3., Florida Statutes (2016). W.W. was served with the petition on May 11, 2016. He entered a denial to the petition.

But days after the TPR petition was filed, the mother died in a car accident. However, the proceedings as to W.W. moved forward, and the TPR trial was scheduled for June 22, 2016. On June 17, 2016, DCF filed an amended petition, removing failure to comply with the case plan as a basis for termination and adding a new statutory ground: that W.W. would be incarcerated for a significant portion of the twins' minority, under section 39.806(1)(d)1., Florida Statutes (2016). W.W. moved to continue the TPR trial for "a short period of several weeks," asserting that he had not yet been served with the amended petition and further alerting the court

3

that the parole board in Mississippi was to establish a release date for him sometime in July 2016, and that he would know the precise release date by July 1, 2016. DCF also moved to continue the trial, because DCF had not yet served W.W. with the amended petition. Although the Guardian ad Litem did not object to the delay, the court declined to continue the trial except to the extent it would relate to the new ground alleged in the amended petition.[2]

The trial proceeded on the grounds alleged in the initial petition, and after service of the amended petition, the trial continued on July 28, 2016. W.W. testified that he would be released on August 2, 2016, just five days after trial. An officer from the prison where W.W. was incarcerated confirmed that W.W. would be released on that date. W.W. testified that upon release he would live with his aunt, that there was living space in the home for the twins, and that he had arranged employment as a roofer. W.W. testified that he loved the twins and wanted to care for them.

W.W. acknowledged that he had not attempted to make collect phone calls to the twins and had not written to them. He further acknowledged that the twins knew little of him. W.W. stated that although he was given seventy-two-hour furlough

_____

[2] W.W. did not appeal the denial of the motion to continue. TPR proceedings require the trial court to balance the fundamental rights of the parent against the best interest of the child to receive permanency. Though it is incumbent upon the trial court to move these proceedings expeditiously to meet the goal of permanency, the court must be careful to balance the need for timeliness with the parties' due process rights.

4

passes on a quarterly basis, he was unable to use that time to visit the twins because he was not permitted to leave Mississippi. But he testified that he did call the twins during his furloughs.

Following the trial, the court ruled that DCF established all three statutory grounds alleged in the amended petition, that termination was in the twins' manifest best interest, and that it was the least restrictive means of protecting the twins from harm. W.W. appeals this order.

## Analysis

"Parents have a fundamental liberty interest, protected by both the Florida and federal constitutions, in determining the care and upbringing of their children." Fla. Dep't of Children & Families v. F.L., 880 So. 2d 602, 607 (Fla. 2004). However, like all fundamental rights, parental rights are not absolute. Padgett v. Dep't of Health & Rehab. Servs., 577 So. 2d 565 (Fla. 1991). "[P]arental rights may be superseded by the State's compelling duty to protect children." F.L., 880 So. 2d at 608. When the State seeks to terminate a parent's rights, it must satisfy three conditions: first, it must demonstrate a statutory basis for termination; second, it must prove that termination is in the child's best interest; and third, it must demonstrate that termination of the parent's fundamental rights over the child is the least restrictive means of protecting the child from harm. See J.P. v. Fla. Dep't of Children & Families, 183 So. 3d 1198, 1203-05 (Fla. 1st DCA 2016). DCF has the

5

burden to prove these three requirements by clear and convincing evidence. A.H. v. Dep't of Children & Families, 144 So. 3d 662, 665 (Fla. 1st DCA 2014). In turn, the appellate court reviews whether competent, substantial evidence supports the court's finding of clear and convincing evidence to support each of the three conditions for termination. J.P., 183 So. 3d at 1203. "A finding that evidence is clear and convincing enjoys a presumption of correctness and will not be overturned on appeal unless clearly erroneous or lacking in evidentiary support." N.L. v. Dep't of Children & Family Servs., 843 So. 2d 996, 999 (Fla. 1st DCA 2003).

W.W. challenges the court's findings with respect to the first and third requirements; that is, W.W. argues the record lacks clear and convincing evidence to support the finding of a statutory basis for termination and the finding that termination is the least restrictive means of protecting the twins from harm. While we conclude there is competent, substantial evidence constituting clear and convincing evidence of a statutory basis for termination, we agree with W.W. that under the unique facts presented here, the evidence is insufficient to demonstrate that termination was the least restrictive means of protecting the twins.

The least restrictive means test "is not intended to preserve the parental bonds at the cost of a child's future." Dep't of Children & Families v. B.B., 824 So. 2d 1000, 1009 (Fla. 5th DCA 2002). And "[i]n spite of the name, 'least restrictive means' does not mean that no alternative to termination of parental rights is

6

conceivable by a court." J.P., 183 So. 3d at 1204-05. However, "[t]he least restrictive means test in the context of termination of parental rights requires those measures short of termination be utilized if such measures will permit the safe reestablishment of the parent-child bond." M.H. v. Dep't of Children & Families, 866 So. 2d 220, 223 (Fla. 1st DCA 2004). Where DCF fails to prove "that there are no measures short of termination that could be used to protect the child from harm, then termination will not pass constitutional muster." J.B. v. Dep't of Children & Families, 107 So. 3d 1196, 1202 (Fla. 1st DCA 2013).

Here, the case plan offered to W.W. during the dependency period was extremely limited due to his incarceration. Instead, DCF's efforts at reunification were primarily directed toward the mother as custodial parent. However, there is no evidence whatsoever that DCF made any further efforts to reestablish a bond between W.W. and the children. We recognize that where DCF offers a case plan to the parent "to address the issues which caused the child to become dependent," courts will ordinarily find a sufficient good-faith effort to satisfy the least restrictive means test. J.P., 183 So. 3d at 1205. Under the circumstances presented here, however, where the custodial parent died during the proceedings, the other parent was on the verge of release, and there was no evidence that reunification would pose any specific safety risk to the children, DCF failed to prove that no measures short of termination would have been appropriate.

7

Rather, termination was based almost exclusively on W.W.'s lack of a significant relationship with the twins and the twins' need for permanency. The court concluded these permanency concerns urged immediate termination of W.W.'s rights, as the twins had been in foster care for a year. But no prospective parent was waiting in the wings to adopt the twins. There was no approved home study for *any* potential permanent placement at the time of trial. The foster parent did not wish to adopt, and a home study for the maternal grandmother was pending, but had previously been denied. Further, the court noted it "[did] not doubt that [W.W.] loves his children."

Under these unique facts, termination of W.W.'s parental rights was not the least restrictive means of protecting the children. Accordingly, the order is REVERSED and the case REMANDED.

LEWIS, B.L. THOMAS, and ROWE, JJ., CONCUR.