# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D18-4930
_____

A.F., Father of K.I.S. and
A.B.-L.S., Minor Children,

 Appellant,

 v.

DEPARTMENT OF CHILDREN
AND FAMILIES,

 Appellee.

_____

On appeal from the Circuit Court for Escambia County.
Coleman Lee Robinson, Judge.

June 5, 2019

B.L. THOMAS, C.J.

In 2017, the Department of Children and Families filed an amended petition for dependency regarding A.S., a fourteen-month-old sheltered child. When Appellant appeared in the case a few months later, the trial court adjudicated him the legal father and issued an order stating that Appellant consented to the dependency and accepted a case plan.

At a judicial review hearing, the trial court found that Appellant had not substantially complied with his case plan, as he tested positive in a recent urinalysis and had not engaged with services. However, as Appellant had participated in regular visitation with A.S., the court continued to allow Appellant

supervised visitation. The trial court made similar findings at two later hearings.

In January 2018, the Department filed a Petition for Termination of Parental Rights based on Appellant's failure to comply with his case plan and based on both parents' failure to achieve reunification with the child. The Department amended the petition to add a ground related to Appellant's incarceration, stating that Appellant had twice been arrested for selling and possessing drugs while the dependency action was pending.

Following an adjudicatory hearing, the trial court terminated the parental rights of both parents. The court found that Appellant did not obtain safe housing, get substance abuse counseling, provide a clean urinalysis, show legal income, reach out to his caseworker, or otherwise complete any of his case plan tasks. The trial court also found that for most of the shelter period Appellant was incarcerated due to conduct in direct contravention of his case plan and that during the four months he was out of prison, he sold and consumed drugs. Appellant challenged the trial court's order, arguing the Department did not prove that termination of Appellant's parental rights was in A.S.'s manifest best interests and was the least restrictive means of protecting the child.

*Analysis*

A judicial decision to terminate parental rights requires the Department to prove that terminating parental rights is in the child's manifest best interests. *C.M. v. Dep't of Children & Families*, 953 So. 2d 547, 550 (Fla. 1st DCA 2007). Moreover, "[g]iven the fundamental liberty interest accorded to parental rights, the Department [has] the burden to show that the termination of parental rights is the least restrictive means of protecting the child from serious harm." *Id.* "While the trial court must find that the evidence is clear and convincing, this court's review is limited to whether competent, substantial evidence supports the trial court's final judgment[.]" *J.P. v. Fla. Dep't of Children & Families*, 183 So. 3d 1198, 1203 (Fla. 1st DCA 2016).

The trial court determines the child's manifest best interests by balancing eleven factors listed in section 39.810, Florida

Statutes. *State, Dep't of Children & Families v. B.C.*, 185 So. 3d 716, 719 n.2 (Fla. 1st DCA 2016). "Although it might be beneficial for an appellate court to know how much weight the trial court assigned to each factor, there is no requirement in the statute to do so." *J.P.*, 183 So. 3d at 1204. Instead, the trial court meets its obligation by making findings that allow an appellate court to determine whether the trial court abused its discretion. *Id.*

Here, the trial court concluded that termination of parental rights was in A.S.'s manifest best interests. The court made findings as to each statutory factor and weighed those favoring termination of parental rights against those disfavoring termination.[*] The court's findings are supported by the following competent, substantial evidence introduced at trial.

---

[*] The eleven factors the trial court must consider are:

(1) Any suitable permanent custody arrangement with a relative of the child;

(2) The ability and disposition of the parent or parents to provide the child with food, clothing, medical care or other remedial care recognized and permitted under state law instead of medical care, and other material needs of the child;

(3) The capacity of the parent or parents to care for the child to the extent that the child's safety, well-being, and physical, mental, and emotional health will not be endangered upon the child's return home;

(4) The present mental and physical health needs of the child and such future needs of the child to the extent that such future needs can be ascertained based on the present condition of the child;

(5) The love, affection, and other emotional ties existing between the child and the child's parent or parents, siblings, and other relatives, and the degree of harm to the child that would arise from the termination of parental rights and duties;

(6) The likelihood of an older child remaining in long-term foster care upon termination of parental rights, due to emotional or behavioral problems or any special needs of the child;

3

Police officers testified that Appellant was found with illegal drugs in amounts indicative of drug dealing and that he admitted to selling drugs. A witness for the guardian ad litem program testified that Appellant did not initiate any of his case plan tasks, had no ability or disposition to provide for A.S.'s needs, and had no capacity to care for A.S. without endangering the child. The guardian ad litem testified that the child developed relationships with substitute parental figures and recommended terminating Appellant's parental rights. A child welfare manager testified that Appellant never engaged in the parenting program or infant mental health services, despite referrals being made for him. She stated that although Appellant was consistent with visitation, he never reached substantial compliance with his case plan or changed his behavior to satisfy the conditions of return. Another case manager testified that services were available for Appellant to progress on his case plan while incarcerated, but he did not take advantage of any of those services.

Appellant testified that he never completed a substance-abuse evaluation, took any parenting classes, or underwent infant mental health services, all of which were required under his case

---

(7) The child's ability to form a significant relationship with a parental substitute and the likelihood that the child will enter into a more stable and permanent family relationship as a result of permanent termination of parental rights and duties;

(8) The length of time that the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(9) The depth of the relationship existing between the child and the present custodian;

(10) The reasonable preferences and wishes of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference;

(11) The recommendations for the child provided by the child's guardian ad litem or legal representative.

§ 39.810, Fla. Stat. (2017).

plan. He admitted he tested positive for multiple illegal drugs and had been arrested for drug dealing after A.S. was sheltered. He admitted he continued selling and using drugs and testified that he did not own or lease a home. When asked what progress he had made on his case plan, Appellant said, "I didn't even start it, sir. Clouded judgment." Although Appellant blamed his inability to begin his case plan on his incarceration, he admitted he had time to start his tasks before he was incarcerated.

Appellant argues that because he had bonded with the child, termination of parental rights was not in the child's best interest. However, the trial court acknowledged that termination of Appellant's rights would cause emotional harm to the child but found that the expected emotional harms were outweighed by the dangers of returning the child to either parent. Because the trial court properly considered all statutory factors and its findings are supported by competent, substantial evidence, and are not unreasonable as a matter of law, we uphold the court's determination on the manifest best interests of the child. *See N.L. v. Dep't of Children & Family Servs.*, 843 So. 2d 996, 999 (Fla. 1st DCA 2003).

We now review whether the termination of Appellant's parental rights was the least restrictive means of protecting the child. The least restrictive means prong is ordinarily satisfied if the Department made a "good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such plan for the present child." *Padgett v. Dep't of Health & Rehab. Servs.*, 577 So. 2d 565, 571 (Fla. 1991). For example, in *J.P.*, 183 So. 3d at 1205-06, termination of parental rights passed the least restrictive means test because there was ample evidence that the Department gave the appellant time to demonstrate she could properly care for her child. By contrast, this Court reversed in *N.L.*, 843 So. 2d at 1003, as "[t]he record [was] devoid of any evidence that N.L. was offered a case plan with a goal of reunification" or evidence that the appellant "refused to accept services."

Appellant argues that the trial court should have assigned A.S. to a permanent guardian, rather than terminating parental rights. However, "[i]n spite of the name, 'least restrictive means'

5

does not mean that no alternative to termination of parental rights is conceivable by a court." *J.P.*, 183 So. 3d at 1204-05. Also, the statute provides that adoption, not permanent guardianship, is the preferred goal if reunification is not feasible. § 39.810, Fla. Stat. (2017); *see also K.W. v. Dep't of Children & Families*, 959 So. 2d 401, 402 (Fla. 1st DCA 2007) ("[T]he possibility of a relative placement is plainly not a reason to delay a decision to terminate parental rights if termination is otherwise in the manifest best interest of the child.").

Competent, substantial testimony established that although Appellant had several months to work on his case plan before his incarceration, and even had services available to him while he was incarcerated, he did not avail himself of services or comply with the plan. He was given time and opportunity to demonstrate an ability to properly care for his child, yet he admittedly failed to take advantage of every opportunity.

AFFIRMED.

LEWIS and ROBERTS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

James F. Turner, Jr., Esq., James Turner Law Firm, LLC, Milton, for Appellant.

Sarah Rumph, Children's Legal Services, Tallahassee; Alan Abramowitz and Thomasina F. Moore, Statewide Guardian Ad Litem Program, Tallahassee, for Appellee.

6