DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOSEPH GARDI,**
Appellant,

v.

**LISA GARDI,**
Appellee.

No. 4D19-194

[June 9, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Kathleen J. Kroll, Judge; L.T. Case No. 502016DR005508XXXXNB.

Samuel Alexander of Alexander Appellate Law, P.A., DeLand, for appellant.

Christopher R. Jette of Eisenberg & Fouts, P.A., West Palm Beach, for appellee.

MAY, J.

The former husband appeals a final dissolution judgment. He argues the trial court erred in its alimony award because it failed to make sufficient factual findings and the award does not reflect the former husband's true need and the former wife's ability to pay. He further argues the trial court erred in awarding durational rather than permanent alimony and in failing to specify lump sum alimony after expressing an intent to do so. Lastly, he argues the trial court failed to consider the tax implications of the durational alimony award. We disagree and affirm in all respects.

After eight years of marriage, the former wife petitioned for dissolution of marriage. The former husband counterpetitioned. The trial court awarded the former husband temporary alimony and required the former wife to keep the former husband on her health insurance coverage. The trial court awarded the former husband exclusive temporary possession of the marital residence.

At the final hearing testimony revealed the former husband earned a net monthly income of $1,221 in Social Security Disability benefits. He testified that he was disabled due to a work-related illness but could, and did, perform some work. He was limited in what he could earn due to his disability benefits.

The former husband's financial affidavit reflected a monthly deficit of nearly $5,000. But the affidavit did not address monetary gifts he received from friends and family. The deficit did include monthly household expenses for which the former husband was not responsible.

He testified that he spends $1,200 per year for repairs and maintenance related to the home, but his financial affidavit doubled that expense. He testified his food expenses were significantly higher because he was required to eat healthy foods due to his medical condition. He spent $600 per month for food in the home and $300 for outside meals.

The former husband testified his friend and business partner lived at his home and sometimes contributed towards utilities and the maid service, but he did not pay rent. He also allowed another friend to reside in the home without paying rent for several months.

The former husband testified he received a 401(k) distribution. Each spouse was to receive an equal amount pursuant to a prior court order, but the former husband unilaterally gave the former wife less than half in violation of the order, keeping the additional funds for use toward his expenses.

The former wife had a monthly surplus of nearly $5,000. She had recently received a promotion, increased income, and a bonus. She estimated the equity in the marital residence to be between $40,000 and $50,000 at the time of the temporary relief hearing and $64,000 at the time of the final hearing. The former wife testified that approximately one half of her health insurance costs went to providing health insurance for the former husband. No one presented evidence regarding the tax consequences of the alimony award.

The day before entry of the final judgment, the trial court held a "Status Conference Regarding Dispute Over Proposed Final Judgment." There, the trial court discussed and clarified the terms of the final judgment with counsel. Lump sum alimony was one of the issues discussed.

The final judgment contained specific findings that the former husband had a need and the former wife had the ability to pay durational alimony. The judgment reflects the trial court considered and made specific findings on each statutory factor set forth in section 61.08(2), Florida Statutes (2017).

The trial court found the party's eight-year marriage was on the low end of a moderate term marriage and that they lived modestly. The trial court considered the parties' respective ages. The former wife was in good physical, mental, and emotional condition. The former husband was currently disabled.

The trial court found the former wife earned substantially more than the former husband. The former wife's 401(k) account had been substantially dissipated by the time of the final hearing. She was going through a Chapter 7 bankruptcy proceeding.

The trial court found that despite the former husband having listed approximately $25,000 in family loans as debt, there was no evidence that he had to repay the money. The trial court addressed the parties' earning capacities and the former husband's employability. Because the former husband testified that he hoped to return to work, the court found it likely he would return to work and earn his previous income.

The trial court also considered the former husband's medical witness' deposition testimony and specifically found that his diagnosis was based primarily upon the former husband's self-reporting. The trial court specifically stated it was "skeptical" whether the former husband was permanently disabled. The trial court also considered the former husband's work, or attempts to work, and his contradictory testimony concerning his ability to work.

After considering the relevant circumstances, the trial court assigned "little weight" to the parties' earning capacities, educational levels, vocational skills, and employability. The trial court found the parties made an equal contribution to the marriage. The parties had no minor children. The trial court specifically ordered the alimony to be taxable to the former husband and deductible by the former wife.

In short, the trial court made findings as to all sources of income available to either party. The trial court specifically expressed its interest to award both durational and lump sum alimony to the former husband. The trial court found no additional factor applicable to do equity and justice.

The trial court awarded the former husband durational alimony of $3,000 per month for three (3) years. The court indicated that $1,500 of the alimony award ensured the former husband's health insurance and ordered that if the COBRA health insurance expense was less than $1,500, then the former wife could use those funds toward the monthly alimony award.

The trial court also noted the former husband's tenant(s) should have been paying rent and used that as an offset to the former wife. The trial court specifically stated the rent offset "becomes lump sum alimony." The order further provided for the former husband to receive all equity in the marital residence in the event of a sale or refinance, but the parties would equally split any deficit.

From the final dissolution judgment, the former husband now appeals.

3

We review an alimony award for an abuse of discretion. *Addie v. Coale*, 120 So. 3d 44, 46 (Fla. 4th DCA 2013). Because the trial court has broad discretion in awarding alimony, the award must reflect need and ability to pay. *Martinez v. Martinez*, 228 So. 3d 164, 166 (Fla. 2d DCA 2017).

Having reviewed the trial court's fifteen-page order, we affirm. Contrary to the former husband's arguments, the trial court heard the testimony and considered each of the requisite statutory factors in determining alimony. The court found the former husband in need of durational alimony but did not find he was entitled to permanent alimony from this eight-year marriage. The trial court was skeptical of the former husband's suggestion that he could not work. The former husband himself testified regarding his intent to return to work.

The trial court awarded the former husband all the equity in the home, thereby providing him with the court's stated intent to provide lump sum alimony. This lump sum alimony also came in the form of forgiveness of the lost rent the former husband failed to charge others who lived in the marital residence. While there is no specific language in the decretal portion of the judgment that designates lump sum alimony, the judgment does provide lump sums of money to the former husband as outlined above.

*Affirmed.*

DAMOORGIAN, J., concurs.
WARNER, J., concurs in part and dissents in part with an opinion.

WARNER, J., concurring in part and dissenting in part.

Although the trial court made many findings with respect to its determination to award durational alimony to former husband, including his need for alimony, it did not make any findings as to his expenses so as to quantify the amount of his need. I would reverse for the court to make findings on the amount of former husband's need as being necessary to review the propriety of the amount of alimony awarded. I concur with the majority as to all other issues.

The trial court accepted that former husband was currently disabled and was receiving social security benefits. It failed to address former husband's expenses. Former husband testified that his expenses amounted to $4,699 per month after application of his social security disability. Yet the court awarded only $3,000, and half of that was purportedly for his medical insurance. While his expenses were thoroughly questioned by former wife's counsel, without knowing what the court found as to the amount of former husband's need, it is not possible to determine whether the trial court's award was supported by competent substantial evidence and was not an abuse of discretion. *See Horowitz v. Horowitz*, 273 So. 3d 263, 267 (Fla. 2d DCA 2019) (finding "even when the court

4

makes findings regarding each of the section 61.08(2) factors, its failure to make findings 'to allow for meaningful review of the *amount* of alimony awarded' constitutes reversible error") (citations omitted); *see also Harkness v. Harkness*, 300 So. 3d 668, 671 (Fla. 4th DCA 2020) (reversing for additional findings where court made no findings of the spouse's needs in terms of her expenses); *Burnett v. Burnett*, 237 So. 3d 447, 449 (Fla. 1st DCA 2018) (concluding that failure to make findings regarding monthly living expenses of needy spouse prevented appellate court from determining the appropriateness of the amount of alimony awarded and required reversal); *Ketcher v. Ketcher*, 188 So. 3d 991, 993–94 (Fla. 1st DCA 2016) (stating failure to make findings "to allow for meaningful review of the *amount* of alimony awarded" constitutes reversible error); *Rutan v. Rutan*, 142 So. 3d 1, 3 (Fla. 2d DCA 2014) (deciding "we cannot perform an adequate appellate review [of the alimony award] to determine whether the parties' incomes and expenses are properly calculated or whether the awards based on those calculations are correct"); *Beasley v. Beasley*, 717 So. 2d 208, 209 (Fla. 5th DCA 1998) (requiring reversal where although some findings under section 61.08(2) were made, they did not explain how the trial court arrived at amount of alimony).

I concur with the majority that the court did not abuse its discretion in failing to award permanent alimony. Section 61.08(8) provides for an award of permanent alimony as follows:

> Permanent alimony may be awarded to provide for the needs and necessities of life as they were established during the marriage of the parties for a party who lacks the financial ability to meet his or her needs and necessities of life following a dissolution of marriage. *Permanent alimony may be awarded following a marriage . . . of moderate duration if such an award is appropriate based upon clear and convincing evidence after consideration of the factors set forth in subsection (2) . . . .*

(emphasis added). To award permanent alimony in a marriage of moderate duration, the court must find that it is the appropriate form of alimony by clear and convincing evidence.

> [C]lear and convincing evidence requires that the evidence must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the testimony must be precise and explicit and the witnesses must be lacking in confusion as to the facts in issue. The evidence must be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.

*Slomowitz v. Walker*, 429 So. 2d 797, 800 (Fla. 4th DCA 1983). Thus, it has both a quantitative and qualitative aspect to it. *Id.* It is for the trier of fact to determine whether the evidence meets that standard. "The trial judge is responsible for finding facts and for resolving any conflicts in the evidence." *In re Adoption of Baby E.A.W.*, 658 So. 2d 961, 967 (Fla. 1995) (citing *Fla. Bar v. Hooper*, 509 So. 2d 289, 290–91 (Fla. 1987)). It is not the place of the appellate court "to conduct a *de novo* proceeding, reweigh the testimony and evidence given at the trial court, or substitute our judgment for that of the trier of fact." *Id.* The standard of review of a finding of clear and convincing evidence is "highly deferential." *J.P. v. Fla. Dep't of Child. & Fam.*, 183 So. 3d 1198, 1203 (Fla. 1st DCA 2016). "While the trial court must find that the evidence is clear and convincing, this court's review is limited to whether competent, substantial evidence supports the trial court's final judgment, and whether the appellate court 'cannot say that no one could reasonably find such evidence to be clear and convincing.'" *Id.* (citing *N.L. v. Dep't of Child. & Fam. Servs.*, 843 So. 2d 996, 1000 (Fla. 1st DCA 2003)).

The court in this case did not find that the evidence was clear and convincing that permanent alimony was required. While the court found that former husband was currently disabled, it noted that former husband hoped to return to the workforce. Although a court may not consider future anticipated events due to their uncertainty in present alimony considerations, *Nelson v. Nelson*, 651 So. 2d 1252, 1254 (Fla. 1st DCA 1995), there was evidence that former husband was already making attempts to work and doing some work. Former husband revealed on cross-examination that he was doing some home inspections just weeks prior to trial. This was the type of work he had performed prior to his illness. There was a possibility of further business with his former partner, as well as some evidence of work already being done by former husband for the partner. And while former husband and his doctors testified that he should not be using cell phones, computers, or going out to places with televisions, former husband's testimony on cross-examination revealed that he acted contrary to those recommendations. The court was skeptical of the permanence of his disability, and there was competent substantial evidence to support that skepticism. As the court was the judge of the credibility and force of the testimony, there was competent substantial evidence to support the court's award of durational alimony rather than permanent alimony.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***

6