DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**E.A.,** the Father**,**
Appellant,

v.

**DEPARTMENT OF CHILDREN AND FAMILIES**
and **GUARDIAN AD LITEM,**
Appellees.

No. 4D21-1534

[December 8, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County, Stacy Schulman, Judge; L.T. Case No. 2020-1291DP.

Kevin G. Thomas, Sunny Isles Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Carolyn Schwarz, Assistant Attorney General, Fort Lauderdale, for appellee Department of Children and Families.

Sara Elizabeth Goldfarb, Statewide Director of Appeals, and Sarah Todd Weitz, Senior Attorney, Appellate Division, Tallahassee, for appellee Guardian ad Litem.

FORST, J.

E.A. ("the Father") and K.A. ("the Mother") separately appeal a final judgment terminating parental rights as to their minor children. Because the Mother and the Father (collectively, "the Parents") advance similar—but not identical—argument across both appellate cases, we address the Parents' arguments in separate opinions. However, in recognition that the termination stems from a common set of facts and the Parents' briefs contain overlapping legal analysis, the opinions contain duplicative language where appropriate.

With respect to the Father's argument, he asserts the trial court erred in terminating his parental rights because sections 39.806(1)(f), (g), (h), and (*l*), Florida Statutes (2019), are unconstitutional, and because there

was insufficient competent, substantial evidence supporting the termination of his parental rights. As to whether sections 39.806(1)(f) and 39.806(1)(*l*) are unconstitutional and whether the termination of the Father's parental rights under these provisions was supported by competent substantial evidence, we affirm for the reasons discussed below. As such, we need not discuss the trial court's termination under sections 39.806(1)(g) or (h).

## Background

Following a six-day trial—during which seventeen witnesses testified—the trial court entered a 110-page final judgment terminating the Parents' parental rights. In the final judgment, the trial court terminated the Parents' parental rights to their two young children (E.A.1, a five-year-old girl, and E.A.2, a two-year-old boy), as well as the Mother's parental rights to her twelve-year-old son, K.B., based on the Father's near fatal beating of K.B. (his stepson) in May 2020.

Around that time, K.B. had begun staying at the Parents' home (rather than at his biological father's house) because the Mother was working from home and was able to better monitor K.B.'s schooling. Notwithstanding K.B. purportedly exhibiting sexually inappropriate behavior toward his five-year-old half-sister, the Parents allowed the two children to share a bedroom. Thereafter, K.B. apparently sexually assaulted E.A.1, and the Father beat K.B. with a metal chair, nearly killing him and causing severe physical and mental damage.

Consequently, as of the date of the final judgment, the Father was incarcerated and awaiting trial on a charge of felony battery resulting in serious bodily injury to a child. The Father's near fatal beating of K.B.—and the Mother's alleged acquiescence and failure to prevent such—was not an isolated incident as it pertained to the involvement of the Department of Children and Families ("Department"). It was the third incident requiring the sheltering of the Parents' children.

The first incident arose in 2014. That year, the Parents lost custody of their then several-month-old child, K.M.A., following a domestic violence episode. Soon thereafter, their parental rights with respect to K.M.A. were terminated and K.B. remained in his biological father's custody and was permitted to visit with the Mother at his maternal grandmother's home on weekends. The Parents were ordered to complete parenting, domestic violence, batterers' intervention, and individual therapy case plan tasks. Neither parent successfully completed the assigned tasks.

2

Subsequently, in 2018, the trial court sheltered E.A.1 and E.A.2 due to a second domestic violence incident between the Parents, which culminated in the Father's arrest. However, the children were returned to the Parents pursuant to a child safety plan, following the Parents' successful completion of assigned tasks. The third sheltering followed the Father's beating of K.B. in 2020.

Ultimately, in consideration of all three shelter events, the trial court terminated the Father's parental rights pursuant to sections 39.806(1)(f), (g), (h), and (*l*), Florida Statutes (2019), and terminated the Mother's parental rights pursuant to sections 39.806(1)(f) and (*l*). Both parents timely appealed, and the cases were consolidated for appellate review.

## Analysis

A challenge to the constitutionality of a statute is a pure question of law, subject to *de novo* review. *D.M.T. v. T.M.H.,* 129 So. 3d 320, 332 (Fla. 2013). "To terminate a parent's rights to his or her child, the Department must prove: (1) at least one statutory ground for termination; (2) termination is in the child's manifest best interest; and (3) termination is the least restrictive means of protecting the child from harm." *J.V. v. Dep't of Child. & Fams.,* 46 Fla. L. Weekly D1807, 2021 WL 3556436, at *1 (Fla. 4th DCA Aug. 11, 2021) (citing *B.K. v. Dep't of Child. & Fams.,* 166 So. 3d 866, 873 (Fla. 4th DCA 2015)).

Further, "[t]he standard of review of the final judgment terminating parental rights is whether the trial court's finding that there is clear and convincing evidence to terminate parental rights is supported by competent, substantial evidence." *V.S. v. Dep't of Child. & Fams.,* 322 So. 3d 1153, 1159 (Fla. 4th DCA 2021) (quoting *T.B. v. Dep't of Child. & Fams.,* 299 So. 3d 1073, 1076 (Fla. 4th DCA 2020)). In reviewing such, an appellate court is "not to conduct a de novo proceeding, reweigh the testimony and evidence given at the trial court, or substitute [its] judgment for that of the trier of fact." *T.M. v. Dep't of Child. & Fams.,* 971 So. 2d 274, 277 (Fla. 4th DCA 2008) (alteration in original) (quoting *In re Adoption of Baby E.A.W.,* 658 So. 2d 961, 967 (Fla. 1995)). "[S]o long as the trial court's ruling on one of the statutory grounds set forth in section 39.806, Florida Statutes, is supported by the evidence, the [trial] court's decision is affirmable." *J.E. v. Dep't of Child. & Fams.,* 126 So. 3d 424, 427–28 (Fla. 4th DCA 2013).

*A. Constitutionality of Sections 39.806(1)(l) & (1)(f), Florida Statutes*

3

"When a statute impinges on a fundamental liberty interest, such as parenting ones [sic] child, we must analyze the constitutionality of the statute under a strict scrutiny standard." *N.B. v. Dep't of Child. & Fams.*, 183 So. 3d 1186, 1188 (Fla. 3d DCA 2016). To withstand strict scrutiny, "the statute must serve a compelling state interest through the least intrusive means possible." *Fla. Dep't of Child. & Fams. v. F.L.*, 880 So. 2d 602, 607 (Fla. 2004). Moreover, "[t]o succeed on a facial challenge, the challenger must demonstrate that no set of circumstances exists in which the statute can be constitutionally valid." *Fraternal Order of Police, Miami Lodge 20 v. City of Miami*, 243 So. 3d 894, 897 (Fla. 2018). It is the State that bears the burden of proving the validity of a law under strict scrutiny. *Norman v. State*, 215 So. 3d 18, 36 (Fla. 2017).

### 1. Constitutionality of Section 39.806(1)(l), Florida Statutes (2019)

Section 39.806(1)(*l*), Florida Statutes (2019), provides for termination of parental rights where it is established that "[o]n three or more occasions the child or another child of the parent or parents has been placed in out-of-home care . . . and the conditions that led to the child's out-of-home placement were caused by the parent or parents." § 39.806(1)(*l*), Fla. Stat. The Father argues the trial court erred in terminating his parental rights pursuant to section 39.806(1)(*l*) because "it is not supported by clear and convincing evidence that the [three] removals were supported by competent evidence."

Specifically, the Father contends that the prior shelter orders that were submitted to the trial court cannot constitute competent substantial evidence because each of these shelter orders were based upon a probable cause standard at the time of issuance, as opposed to a clear and convincing evidence standard.

In *N.B. v. Florida Department of Children & Families*, 183 So. 3d 1186 (Fla. 3d DCA 2016), our sister court dealt with a similar argument. There, the parent argued that section 39.806(1)(*l*) was facially unconstitutional because it permitted the termination of parental rights on a lesser standard of proof than the clear and convincing standard because the prior out-of-home placements were based on either a probable cause standard or preponderance of the evidence standard at the time the placements occurred. *Id.* at 1188. The Third District Court of Appeal rejected the parent's characterization of the standard of proof as being less than clear and convincing. In reaching this conclusion, the court cited

language from then Chief Judge Hawkes' concurring opinion in *K.J. ex rel. A.J. v. Department of Children & Families*, 33 So. 3d 88 (Fla. 1st DCA 2010). *Id.* at 1188.  There, Judge Hawkes stated:

> Here, the Legislature concluded it is harmful for children to be removed from the same home numerous times; therefore, prior instances of out-of-home placement can be relied on in establishing grounds for the termination of parental rights . . . . Like other statutory provisions recognizing the danger posed by repetitive bad behavior, section 39.806(1)(*l*) was designed to protect children when parents continually engage in conduct warranting out-of-home placement.  Not only have these parents proven they are incapable of improving their behavior, but they have created a situation of instability and uncertainty for their children by causing a need for them to be repeatedly uprooted.  Consequently, there is nothing improper, retroactive, or violative of any of [the parent's] rights in the Legislature's decision to authorize the courts to consider additional factors when making termination of parental rights decisions.

*Id.* (quoting *K.J.,* 33 So. 3d at 90 (Hawkes, C.J., concurring)).

We agree with the Third District's (and Judge Hawkes') rationale.  "[T]he legislature possesses broad discretion in determining what measures are necessary for the public's protection, and [an appellate court] may not substitute [its] judgment for that of the legislature 'insofar as the wisdom or policy of the act is concerned.'" *Barnes v. B.K. Credit Serv., Inc.*, 461 So. 2d 217, 219 (Fla. 1st DCA 1984) (quoting *Hamilton v. State*, 366 So. 2d 8, 10 (Fla. 1979)).  Here, it was clearly within the Legislature's province to decide that three or more out-of-home placements constitutes grounds for termination of parental rights.  Indeed, there is nothing unconstitutional about curtailing a child's ability to be repeatedly removed from the same home.

The Third District further noted that because the Department is also required to prove by clear and convincing evidence that termination is the least restrictive means of protecting the child and in the manifest best interests of the child, there were additional safeguards in place to ensure that the Department met its burden of proof. *Id.* at 1188–89.  Based upon Judge Hawkes' analysis and the presence of additional safeguards, the

court rejected the appellant's "facial constitutional challenge to section 39.806(1)(*l*)." *Id.* at 1189.[1]  We do so as well in the instant case.

### 2.  *Constitutionality of Section 39.806(1)(f), Florida Statutes* (2019)

Section 39.806(1)(f), Florida Statutes (2019) permits the termination of parental rights if it is established that "[t]he parent or parents engaged in egregious conduct or had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct that threatens the life, safety, or physical, mental, or emotional health of the child or the child's sibling."  § 39.806(1)(f), Fla. Stat.  Under section 39.806(1)(f), "[p]roof of a nexus between egregious conduct to a child and the potential harm to the child's sibling is not required."  *Id.*

The Father does not dispute that he "engaged in egregious conduct . . . that threatens the life, safety, or physical, mental, or emotional health of" his stepson, K.B.  Instead, he challenges the constitutionality of the second sentence of this provision, which was added in 2014 and eliminates the necessity for the State to provide proof of a nexus between egregious conduct toward a child (here, K.B.) and the potential harm to the child's sibling(s) (here, E.A.1 and E.A.2).

First, the Father argues the statute is unconstitutional as applied.  However, the Father fails to develop or explain this argument, thus we affirm as to this issue without discussion.

Second, the Father argues that the statute is unconstitutional on its face because it does not require proof of a nexus between egregious conduct toward a child and the potential harm to the child's sibling.  We recently addressed this same constitutional challenge in *V.S. v. Department of Children & Families*, 322 So. 3d 1153 (Fla. 4th DCA 2021).  In that case, a parent challenged the constitutionality of the 2014 amendment to (1)(f), arguing this amendment was facially unconstitutional because "it eliminate[d] proof of a nexus between the egregious acts to one child and substantial risk of significant harm to the child's siblings."  *Id.* at 1156.  We rejected this argument, holding "the 'no nexus required' amendment is not incompatible with [Florida supreme court precedent]" or with strict scrutiny analysis.  *See id.* at 1162 (emphasis omitted).  In

---

[1] Although we have since noted that "the legislature abrogated the least restrictive means inquiry" for subsection (1)(*l*), among others, *see V.S. v. Department of Children & Families*, 322 So. 3d 1153, 1163 (Fla. 4th DCA 2021), the manifest best interest requirement remains an additional safeguard.

doing so, we specifically noted that *Padgett v. Department of Health & Rehabilitative Services*, 577 So. 2d 565 (Fla. 1991) recognized a parent's conduct toward another child may demonstrate a substantial risk of harm to the current child in "some cases," and "'[e]gregious conduct' would appear to fall into the narrow 'some cases' category." *Id.* at 1161.

Subsequently, in *R.S. v. Department of Children & Families*, 46 Fla. L. Weekly D2132, 2021 WL 4448768 (Fla. 4th DCA Sept. 29, 2021), we again upheld section 39.806(1)(f)'s constitutionality. Thus, we follow our precedent in *V.S.* and *R.S.* and reject the Father's argument.

> *B. Termination of E.A.'s Parental Rights was the Least Restrictive Means to Protect his Children and was in the Children's Manifest Best Interests*

The Father argues that the trial court erred in terminating his parental rights because there was no competent, substantial evidence showing that termination was the least restrictive means to protect the children. The Father contends the Department did not offer him any services or a case plan for reunification and that the testimony presented at trial demonstrated that the provision of services could have remedied his violent behavior and made reunification possible without any risk of harm to his two biological children.

A parent has a fundamental liberty interest in the care, custody, and companionship of their child; thus, to satisfy constitutional concerns, the Department "must establish in each [termination of parental rights] case that termination of those rights is the least restrictive means of protecting the child from serious harm. This means that [the Department] ordinarily must show that it has made a good faith effort to rehabilitate the parent and reunite the family . . . ." *Padgett v. Dep't of Health & Rehab. Servs.*, 577 So 2d 565, 571 (Fla. 1991); *see also B.K*, 166 So. 3d at 873.

However, if the parent's parental rights are terminated pursuant to sections 39.806(1)(b)–(d) or 39.806(1)(f)–(m), it is not necessary for the trial court to conduct a least restrictive means inquiry. § 39.806(2), Fla. Stat. (2019) ("Reasonable efforts to preserve and reunify families are not required if a court of competent jurisdiction has determined that any of the events described in paragraphs (1)(b)-(d) or paragraphs (1)(f)-(m) have occurred."); *see also V.S.*, 322 So. 3d at 1163 (stating that by enacting section 39.806(2), "the legislature has abrogated the least restrictive means inquiry for 'egregious conduct' cases, among others").

Here, the trial court found that grounds for termination existed under sections 39.806(1)(f), (g), (h), and (*l*); thus, it was not required to conduct a least restrictive means inquiry. Although the trial court acknowledged this in its final judgment, it nevertheless made a finding that termination was the least restrictive means of protecting the children and this finding was supported by competent substantial evidence. "It is well-settled that, where the trial court's finding that there is 'clear and convincing' evidence to terminate parental rights is supported by competent substantial evidence [the appellate court has] no choice but to affirm." *T.M.*, 971 So. 2d at 277 (alteration in original) (quoting *D.S. v. Dep't of Child. & Fams.*, 842 So. 2d 1071, 1072 (Fla. 4th DCA 2003)).

Further, competent, substantial evidence established termination of E.A.'s parental rights was in the children's manifest best interest. The manifest best interest analysis requires the trial court to assess eleven factors when deciding whether termination is in the child's best interest. § 39.810, Fla. Stat. (2019). The appellate court's standard of review is "highly deferential." *J.P. v. Fla. Dep't of Child. & Fams.*, 183 So. 3d 1198, 1204 (Fla. 1st DCA 2016). The trial court made findings and analysis under the eleven factors. Among the findings was that "if either of the Parents cared for the Children again, the Children's well-being would be in danger." Moreover, the trial court was satisfied that the children were in a stable placement, living with the Mother's aunt, who testified she was willing to adopt the children. "Reweighing the evidence at the appellate level would violate the highly deferential standard we must apply." *Id.*

## Conclusion

Based on the foregoing, we affirm the termination of the Father's parental rights with respect to his two children, E.A.1 and E.A.2.

*Affirmed.*

CONNER, C.J., and KUNTZ, J., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

8